**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| J.O.B., a minor, *et al*., | : | Case No. 3:23-cv-217 |
| | : | |
| Petitioners/Plaintiffs, | : | |
| | : | |
| vs. | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| UNITED STATES OF AMERICA, *et al*., | : | |
| | : | |
| Respondents/Defendants. | : | |

---

## REPORT AND RECOMMENDATION

---

In this case, a father and child seek a writ of habeas corpus to secure the child's release from alleged custody. The matter currently is before the undersigned United States Magistrate Judge to consider their application for relief and its attachments (ECF No. 5-1 through 5-23); two motions to dismiss it (ECF Nos. 15-16, 23); responses and reply to those motions (ECF Nos. 22, 24, 25); and four filings entitled "Mandatory Judicial Notice" (ECF Nos. 14, 17, 26, 27). Having carefully considered all these materials and the applicable law, the undersigned **RECOMMENDS** that the Court **DISMISS** the case for lack of jurisdiction.

## I.    INTRODUCTION

Jamus Oran Bryant brought this action in 2023 by filing an "Affidavit of Petition for Writ of Habeas Corpus and Other Declaratory and Injunctive Relief." (ECF No. 1). He purported to file pro se on his own behalf, on behalf of J.O.B. (his minor child), and as "next friend" for J.O.B. (*Id*.). Mr. Bryant later filed an amended affidavit, which is

now the operative pleading in the case. (*See* ECF No. 5-1). This Report and Recommendation will refer to the "Amended Affidavit of Petition for Writ of Habeas Corpus and Other Declaratory and Injunctive Relief" that is currently of record as ECF No. 5-1, as well as its attachments (ECF No. 5-2 through 5-23), together as "the Application." It will refer to J.O.B. as "the Child" and Mr. Bryant as "Father."

The Child and Father seek the Child's release and reunification with Father. They have named Mother as a defendant, as well as the United States of America, the Secretary of the United States Air Force, and a private attorney who represented Mother in state custody proceedings. All four defendants have asked the Court to dismiss the case, arguing (among other things) that the Court lacks jurisdiction to grant habeas corpus relief in child custody matters.

The undersigned agrees with some of Defendants' arguments and ultimately concludes that this Court lacks jurisdiction to consider the habeas corpus claim. More specifically, the undersigned concludes that this Court cannot consider a habeas corpus claim where the petitioner—here, the Child—is not "in custody" as that term is used in the statute. The undersigned will therefore recommend that the Court grant the motions to dismiss to the extent they make this argument, and dismiss the case in its entirety.

## II.     SUMMARY OF THE APPLICATION

The Child and Father refer to themselves as "Plaintiffs" in the caption of the Application, and as "Petitioners" and "Plaintiffs" within it. (*See*, *e.g.*, Application ("App."), PageID 116, 117, 122,  134, 136, 137, 139). The Child and Father name the

following four defendants, who are alleged to be connected in various ways to the United States Air Force ("USAF"):

> **(1)** the United States of America, which, Father says, "operates and maintains, the United States Air Force 460th medical group at Buckley Air Force Base, located in Aurora Colorado" (App., ¶ 26);
>
> **(2)** Frank Kendall III, the 26th Secretary of the USAF[1] ("Secretary Kendall") (App., ¶ 27);
>
> **(3)** Stacy Michelle Angel ("Mother"), who is an officer in the USAF (App., ¶ 28); and
>
> **(4)** Grant Bursek, a former servicemember and Colorado attorney who represented Mother in Mother and Father's Colorado custody case ("Bursek" or "Attorney Bursek") (App., ¶¶ 4, 16, 29).

(*See* App., PageID 116-117, 122-123).

The Application describes a dispute between Father and Mother about their Colorado custody arrangement (or lack thereof), and about Mother and the Child's physical location. It largely concerns Father's assertion of his parental rights and request to be reunified with the Child, and his allegations that Mother, Attorney Bursek, the USAF, and a Colorado state court have conspired to keep the Child (and the Child's

---

[1] *See* https://www.af.mil/About-Us/Biographies/Display/Article/2730581/secretary-of-the-air-force-frank-kendall/ (last visited August 27, 2024).

whereabouts) from him. The Application also asserts that the Child's rights have been violated.

Father says he is a resident of Ohio. (App., ¶ 1). The Child was born in Colorado. (App., ¶ 2). The Application does not clarify Mother's residency,[2] but does allege that she is or was in Ohio with the Child. (*See* App., ¶¶ 28, 45, 47). Father suggests that Mother was attempting to take the Child to Italy. (App., ¶ 49; *see also* ECF No. 5-20, PageID 200). He also asserts that Attorney Bursek erroneously told a Colorado state court that Mother had deployed to Japan. (App., ¶¶ 4, 8, 45; ECF No. 5-20, PageID 201). Father emphasizes that Attorney Bursek refused to the tell a Colorado court where Mother and the Child were actually located, based on "national security concerns." (App., ¶¶ 10-11, 41-42, 47, 49-50, 54).

Based on that interaction, Father alleges that the Child is "being unlawfully restrained by the USAF under the National Security Act, title 50 Chapter 15." (App., ¶ 3). Father also

> believes a reasonable inference can be drawn that, the USAF ultimate goal is to place [Mother and the Child] outside the arm of the state courts, by unlawfully assisting [Mother] in fraudulently procuring [the Child] a passport from the U.S. Dept of State without [Father's] approval and deploying [Mother] outside of the United States, effectively concealing the defendants fraud upon the court, and unlawfully "blocking off'" [the Child from Father] . . .

(App., ¶ 55). Father describes this as a "conspiracy to defraud [him] of protected liberty." (*Id.*).

---

[2] In later briefing, Father alleges that Mother and the Child "were permanent residents in Ohio" while the Colorado state proceedings were occurring. (*See* ECF No. 22, PageID 294).

The Application contains a section entitled "Legal Framework: Habeas Authority." (App., ¶¶ 57-60; *see also* PageID 116). It frames the "question presented" in this case as follows:

> Whether the habeas corpus statute, 28 U.S.C. §§§ 2241, 2243, 2255, confers jurisdiction on the federal courts to consider collateral challenges to [USAF's] "national security" claim and the [Colorado state court's] acquiescence, which had the effect of involuntarily restraining [the Child], and substantially depriving [Father and the Child] of their protected . . . familial interest under the 14th amendment of the U.S. Constitution.

(App., ¶ 57). The Application asserts that "[b]ecause this action arises in the context of habeas corpus, this Court has plenary authority, both statutory and equitable, to remedy [the Child's] continuing unlawful restraint." (App., ¶ 59). It further asserts that "habeas courts have broad authority to enter any form of order, including declaratory or injunctive relief." (App, ¶ 60). The Child and Father seek such relief. (App., PageID 139).

The Application contains two claims or causes of action. The first claim is labeled "Violation of Plaintiffs fundamental liberty protected by 14th Amendment of U.S. Constitution." (App., PageID 135). It asserts that the Child is "under restraint of the USAF," but has a liberty interest in being free from this unlawful restraint. (App., ¶ 63, 66). This claim asserts that both the Child and Father have a "substantive due process right to remain together as a family and ensure their family integrity" and a "right . . . to be together." (App., ¶ 64-65). For clarity, the undersigned notes that the Child is the only one allegedly restrained; the Application does not allege that Father is restrained by the USAF or the other Defendants. (*Cf.*, App., ¶¶ 63 ("Petitioner J.O.B. has a liberty interest

5

under the Due Process Clause to be free from unlawful restraint."), ¶ 66 ("J.O.B. is under restraint of USAF")).

In addition, Father says that his fundamental rights as a parent required the court to hold a hearing before the Child was taken from him. (App., ¶ 66-67). Father further argues that:

> the conspiracy to defraud him and J.O.B. of their fundamentally protected liberty is exemplified when the state court, Mr. Bursek, and USAF, collectively, unlawfully restrained J.O.B, without a declaration of [Father's] parental "unfitness," and without providing [him] with an "opportunity" to challenge the USAF claim of national security . . .
>
> The fraud was commenced and instituted by the defendants, without subject matter jurisdiction, in clear violation of the Plaintiffs constitutional due process right to adequate notice and opportunity to be heard, with the deliberate intent to harm the Plaintiffs, and is the cause of the deprivation of Plaintiffs' protected liberty herein stated.

(App., ¶ 67-68). The Child and Father conclude that the unlawful deprivation of their "familial interest" violates the Fourteenth Amendment and is "made cognizable under 28 USC §§§ 2241, 2243, 2255." (App., ¶ 69).

The second claim in the Application is brief and unlabeled. It seeks relief under this Court's "equitable, common law habeas authority" and the All Writs Act, 28 U.S.C. § 1651. (App., ¶¶ 71-72).

For relief, the Child and Father request a writ of habeas corpus, temporary restraining order, or preliminary injunction ordering the Child's immediate release from restraint pending final resolution of the case. (App., PageID 139). They also seek a declaration that the Child's separation from Father is unlawful and an order to:

C. Preliminarily and permanently enjoin defendants from continuing to separate J.O.B. from Mr. Bryant.;

D. Enjoin USAF from moving or transferring J.O.B. from the District of Ohio, or from delivering or releasing J.O.B. into the custody of anyone except . . . Mr. Bryant;

E. Fashion such additional relief as is necessary and appropriate, including declaratory relief or other interim relief necessary to vindicate Petitioners' rights under U.S. law.

F. Should USAF personnel be unlawfully restraining J.O.B. in another country, order the USAF to immediately return J.O.B to the United States of America, and deliver J.O.B. into Mr. Bryant care.

(App., PageID 139).

Significantly, this case is not the only case that Father has filed concerning the Child and Father's parental rights. Other cases either are or were pending in state and federal court in both Colorado and Ohio. An overview of the cases follows, to provide context for the undersigned's analysis.

## III.    COLORADO CASES

### A.    State Court: Arapahoe County District Court

The Application refers to a case in Colorado state court. (App., ¶¶ 2, 5, 32, 57). From the documents attached to the Application, it appears that the case is *In re the Parental Responsibilities concerning*: *[J.O.B.],* Arapahoe County District Court Case No. 2020DR79. The undersigned will refer to the Colorado state court where the case was filed as the "Arapahoe County Court."

7

The attached documents reflect that Mother filed a Petition for Allocation of Parental Responsibilities[3] concerning the Child in January 2020. (*See* Exhibit H, ECF No. 5-11, PageID 170-173). In December 2020, Mother and Father agreed to share parenting time. (*See* Exhibit A, ECF No. 5-2, PageID 141-144).

The Application refers also to two stays entered in the Colorado Court of Appeals. (App., ¶¶ 5, 8). It appears from context that Father appealed unfavorable decisions of the Arapahoe County Court. (*See* ECF No. 5-19, PageID 198). No further information is provided in the Application, but it appears from later filings and other court records and that Mother has physical control of the Child and most decision-making authority about the Child.[4] This court may take judicial notice of these and other court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)); *see also*

---

[3] "Allocation of parental responsibilities" appears to be the Colorado Courts' preferred term for what may elsewhere be referred to as a child custody case. *See, e.g.*, Colo. Rev. Stat. § 14-10-124(1.5) (entitled "Allocation of parental responsibilities"). It says:

> The court shall determine the allocation of parental responsibilities, including parenting time and decision-making responsibilities, in accordance with the best interests of the child giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs of the child . . .

The terms are used interchangeably herein.

[4] Some appeals from decisions in the Arapahoe County Court appear in public records. *See, e.g.,*

- *In re J.O.B.*, No. 21CA1128, 2023 WL 1071603 (Colo. App. Jan. 26, 2023*), cert. denied sub nom. In re Marriage of Bryant & Angel*, No. 23SC169, 2023 WL 5031655 (Colo. Aug. 7, 2023);
- *In re J.O.B.*, No. 21CA1724, 2023 WL 1071660 (Colo. App. Jan. 26, 2023);
- *In re J.O.B.*, Nos. 22CA1990 & 22CA2281, 2023 WL 5322750 (Colo. App. Aug. 17, 2023).

*See also* Section V.B.2 below.

8

*generally* Fed. R. Evid. 201. Some of these court records are discussed in more detail below.

## B.     Federal Court: District of Colorado and Tenth Circuit

In April 2023, a few months before he filed the instant case, Father filed a case in the United States District Court for the District of Colorado.

> In his 151-page Second Amended Complaint, Plaintiff provides a thorough and detailed account of the allegations underlying his forty-three causes of action under federal and state law. . . . In short, Plaintiff is in a child custody dispute in state court with Defendant Angel, the mother of his child. In this lawsuit, he has sued several state court judges, attorneys, and others who have had some connection to the state court case, Arapahoe County District Court Case No. 2020DR79.

*Jamus Oran Bryant v. Bonnie Heather McLean, et al.,* No. 23-cv-00997-NYW-KAS, 2024 WL 809897, at *1 (D. Colo. Feb. 27, 2024), *report and recommendation adopted in part*, (D. Colo. Mar. 20, 2024), *appeal dismissed*, No. 24-1123 (10th Cir. May 10, 2024) (footnote and internal docket citations omitted).

> The defendants [in that case] include: (1) Capt. Stacy Angel (Mr. Bryant's ex-wife) and the United States Air Force (her employer) (collectively, in their official capacities, the "Federal Appellees"); (2) several Colorado judges and magistrate judges (collectively, the "State Appellees"); and (3) lawyers involved in the child custody proceedings (collectively, the "Jones Appellees"). Mr. Bryant primarily sought declaratory relief and money damages, but he also sought a "preliminary and permanent injunction, restraining defendants McLean, Moschetti, Apostoli, Angel, Townsend, and [the] U.S. Air Force from continuing to violate [Mr. Bryant's] constitutional and statutory rights on all relevant claims."

*Bryant v. McLean,* No. 23-1123, slip op. (10th Cir. May 10, 2024). The U.S. District Court case in Colorado was dismissed in part, stayed in part, and administratively closed pending resolution of the state court action. *Bryant v. McLean,* 2024 WL 1195326, *13

(D. Colo. Mar. 20, 2024). The Tenth Circuit recently dismissed Father's appeal of that decision for lack of jurisdiction. *Bryant v. McLean*, No. 23-1123 (10th Cir. May 10, 2024).

## IV. OHIO CASES

### A. State Court: Greene County Juvenile Court

The Application refers to a case pending in the Juvenile Division of the Common Pleas Court of Greene County, Ohio. (App., ¶ 13, 53). The undersigned will refer to this court as the "Greene County Court." The Application attaches two apparent Magistrate's Orders from that court in a case concerning the Child. The orders reflect that Father filed a Complaint for Legal Custody of the Child in April 2023, and that the Magistrate of the Ohio Juvenile Court had concerns about whether Mother had been served. (*See* Exhibit D, ECF No. 5-6, PageID 162-163; Exhibit D-1, ECF No. 5-7, PageID 164-165). A contested hearing in that case was scheduled for August 31, 2023. (ECF No. 5-6, PageID 162). The Application does not indicate whether that case is pending or concluded, but Father's later filings indicate that his complaint for custody was dismissed without prejudice in October 2023 (*see* ECF No. 17-1, PageID 254), and that service failed in a second case Father filed in 2023 (*see* ECF No. 26-1, PageID 339).

Online public records reflect that Father filed an appeal in 2024 from one of the Greene County Court's decisions. The Ohio Court of Appeals' docket reflects that the appeal was dismissed for non-payment of the filing fees on June 10, 2024.[5]

---

[5] Available by name search at https://courts.greenecountyohio.gov/eservices (last visited Aug. 27, 2024)

**B.     Federal Court: Southern District of Ohio**

As noted above, Father filed an "Affidavit of Petition for Writ of Habeas Corpus" to initiate this case in July 2023, the month before the scheduled contested hearing in Greene County, Ohio. (ECF No. 1). He paid a filing fee of $402. (ECF No. 4).

Father filed the "Amended Affidavit of Petition for Writ of Habeas Corpus"—the Application discussed herein—in August 2023. Service was issued (ECF No. 6) and all four named defendants have appeared through counsel. Father is proceeding pro se.

**1.     Motions to dismiss**

Attorney Bursek filed a motion to dismiss all the claims against him. (ECF Nos. 15-16). As discussed below, Bursek argues that this Court should dismiss the claims against him for lack of subject-matter and personal jurisdiction. (*Id*.). Bursek also invokes the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and the First-to-File Rule. (*Id*., PageID 234). Father filed a response opposing the motion to dismiss on all grounds. (ECF No. 22). Bursek filed a reply. (ECF No. 24).

The United States, Secretary Kendall, and Mother filed a joint motion to dismiss. (ECF No. 23). This Report and Recommendation will refer to these three parties together as the "Federal Defendants" for ease of reference, as Kendall and Mother are sued in only their official capacities. (App., PageID 116; *see also* PageID 123 ("Defendant Frank Kendall, in his official capacity, is the 26th Secretary of the Air Force" and "Stacy Michelle Angel . . . is an officer in the United States Air Force Base, and is employed by and acting on behalf of the Defendant United States of America")). The Federal

11

Defendants' motion to dismiss indicates that Mother is a Captain in the USAF. (ECF No. 23, PageID 301).

The Federal Defendants challenge this Court's subject-matter jurisdiction and argue that habeas corpus relief is not available here. (ECF No. 23, PageID 305-308). They argue that the Child and Father have failed to state a due process claim against them. (ECF No. 23, PageID 308-311). They address the allegation that Mother would not provide her address by pointing to the Colorado Courts' "Address Confidentiality Program," which is "a statewide program that provides survivors of domestic violence, sexual offenses, and/or stalking with a legal substitute address for interacting with all state and local government agencies." (*Id.*, PageID 301-302; ECF No. 23-1, PageID 313-314 (discussing the "ACP")). Father filed a Response disputing many of the Federal Defendants' arguments. (ECF No. 25). The Federal Defendants did not file a reply.

### 2.    "Mandatory Judicial Notice[s]"

Father has filed four documents entitled "Mandatory Judicial Notice." (*See* ECF Nos. 14, 17, 26, 27). The first three notices were filed roughly contemporaneous with or soon after the events they describe.

In the first notice, Father asks "this Court to take notice of facts that further demonstrate the [USAF] is the driving force behind the unlawful restraint" of the Child. (ECF No. 14, PageID 227). Attached to the first notice is a printout from a service called "TalkingParents," which appears to contain messages between Father and Mother over several days in September 2023. (ECF No. 14-1). In it, Mother indicates that she has "a work obligation and won't be available for a period of time," but does not elaborate on

12

the nature of her obligation. (*Id.*, PageID 231). Father argues that "a reasonable inference can be drawn that [Mother] has plans to remove [the Child] outside this Court's jurisdiction, and unlawfully restrain [the Child] for the next five years with the assistance of the U.S. Air Force." (ECF No. 14, PageID 228).

In the second notice, Father provides an order from the Greene County Court dismissing Father's complaint for legal custody without prejudice in October 2023. (ECF Nos. 17, 17-1). Father says the court dismissed his case based on statements from a USAF officer about Mother's deployment. (ECF No. 17, PageID 250). He also provides what may be an unfiled copy of a motion filed by a different attorney representing Mother in the Arapahoe County Court. (ECF No. 17-2). The motion was filed under the Servicemember's Civil Relief Act. (*Id.*). It alleges that Mother "is being deployed to an undisclosed location for an undisclosed duration" and asks for a stay of proceedings in the original parental rights case. (*Id.*, PageID 256). Father includes arguments about what these documents demonstrate. (ECF No. 17, PageID 249-251).

In the third notice, Father provides a copy of a clerk's notice in one of the cases he filed in the Greene County Court. (ECF Nos. 26, 26-1). In it, the clerk informed Father

> that the documents to be served to **Dale E. Harrell in the care of Stacy M. Angel, 4881 Sugar Maple Dr, Wright-Patterson Air Force Base, OH 45433, by personal service** were returned to the Court by the Greene County Sheriff's Office for the following reason: DEPLOYED-WON'T BE BACK UNTIL SPRING.

(ECF No. 26-1, PageID 339 (emphasis in original)). Father includes arguments about what this document means.

In the fourth notice, Father details certain filings in this case and other cases, makes arguments, and expresses concern that this case is still pending. (ECF No. 27). This Court issued an Order addressing the fourth notice on July 10, 2024. (ECF No. 28).

## V.     ANALYSIS

This unusual habeas corpus action presents the Court with a series of threshold issues, only some of which the parties have addressed. The Court also has "a duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue sua sponte" (or on its own). *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). These issues are discussed below.

### A.     Initial Threshold Issues

#### 1.     Framework

The undersigned first considers the framework in which the claims should be analyzed. Positioning the claims within the proper framework will help determine the proper parties, applicable rules, and the nature of the Court's review. *See Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809-10 (6th Cir. 2012) ("We consider at the outset the legal standards applicable to [the] petition . . . Our review . . . differs significantly depending on which section of the habeas statute applies.").

The Application indicates that the "Legal Framework" for this case is this Court's "habeas authority" under the federal habeas corpus statutes and common law. (App., PageID 134; *see also* PageID 116). Both the "Legal Framework" section and the "Jurisdiction" section invoke this Court's habeas corpus authority. The latter section provides, in full:

## JURISDICTION

21.  This Court has habeas jurisdiction pursuant to 28 U.S.C. §§§ 2241, 2243, 2255 (habeas jurisdiction), as well as equitable, common law habeas authority. The Court also has jurisdiction to grant relief pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. § 701 et seq.); 28 U.S.C. § 1346 (United States as defendant); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. §§ 2201-2202 (Declaratory Judgement Act); U.S.C. Rule 65 (Injunctions and restraining orders).

(App., PageID 121). The Child and Father also emphasize in briefing that this is a habeas corpus action (as opposed to a civil action under 42 U.S.C. § 1983). They say, in response to Attorney Bursek's motion to dismiss:

> [T]he Plaintiff states this Court has subject matter to exercise jurisdiction over Plaintiffs Habeas complaint. Plaintiffs' Habeas complaint has different defendants than his 1983 complaint [in Colorado federal court]. Additionally, Plaintiff 1983 complaint and Habeas complaint do not ask for identical relief. Moreover, the Plaintiff states under federal law, Plaintiff is required to file Habeas complaint in the state that the unlawful restraint is occurring.

(ECF No. 22, PageID 290; *see also* PageID 292 (emphasizing the difference between Section 1983 and habeas corpus actions generally, and between his Section 1983 and habeas actions)). Accordingly, the undersigned considers this case to be a habeas corpus action seeking various types of relief and will proceed under that framework. *See United States v. Kirkpatrick*, No. 1:96-cr-81, 2009 WL 2823658, at *8 (E.D. Tenn. Aug. 28, 2009) ("The Court should not override and disregard the pro se litigant's deliberate choice of the procedural vehicle for presenting and pleading his claim.").

As will become apparent in the following sections, a habeas corpus action is not a Section 1983 or civil action by another name, but is instead a separate and distinct type of proceeding with well-established rules and significant, often dispositive, limitations.

15

Before turning to the habeas corpus statutes, the undersigned will address one additional issue about the scope of the case.

### *The APA and FTCA*

The Application includes citations to two other federal laws but does not actually raise claims or seek relief under them. First, the Application cites to 5 U.S.C. § 701 *et seq.*, the Administrative Procedures Act ("APA"). (App., ¶¶ 20-21). Second, it cites 28 U.S.C. § 1346, entitled "United States as defendant." (App., ¶ 21). This may (or may not) be an attempt to invoke the Federal Tort Claims Act ("FTCA"). Although the Application cites these statues, it does not appear to actually raise claims under the APA or FTCA, as far as the undersigned can tell. None of the parties have addressed such claims. To the extent Father would argue that he *has* raised such claims in the Application, they should be severed and dismissed.

This Court generally does not permit combined habeas corpus and other civil claims to proceed together in one case. *See Cox v. Nord*, No. 1:23-cv-324, 2023 WL 5917523, at *1 (S.D. Ohio Aug. 24, 2023) (quoting *Ruza v. Michigan*, No. 1:20-cv-504, 2020 WL 4670556, at *2 (W.D. Mich. Aug. 12, 2020) (civil rights claims and habeas corpus claims should proceed in separate cases—"courts generally have been reluctant to allow hybrid civil rights/habeas actions, given that civil rights actions and habeas petitions have distinct purposes and contain unique procedural requirements that make a hybrid action difficult to manage"); *see also, e.g.*, *Martin v. Shoop*, No. 2:22-cv-4423 (S.D. Ohio Jan. 25, 2024) (striking a civil complaint filed in a habeas corpus case);

16

*Foster v. ODRC*, No. 2:22-cv-2153 (S.D. Ohio Jan. 26, 2023) (removing a habeas corpus petition filed in a civil action).

These cases reflect that as a matter of docket management, courts may sever and dismiss civil claims filed in habeas corpus cases (and conversely, habeas claims raised in civil cases) without prejudice. *See Winburn v. Gidley*, No. 2:18-cv-10271, 2018 WL 783489, at *2 (E.D. Mich. Feb. 7, 2018) (where "Petitioner also seems to raise civil rights claims" in his habeas petition, the court said that "he must bring them in a properly filed civil rights action. . . . Petitioner may not circumvent [the statutory] requirements by filing a joint or hybrid action. His civil rights claims are subject to severance and dismissal.").

Accordingly, **to the extent that Father would argue that he *has* raised claims under the ACA or FTCA in the Application, the undersigned RECOMMENDS that the Court <u>SEVER</u> those claims from this habeas corpus action and <u>DISMISS</u> them <u>WITHOUT PREJUDICE</u>**. This determination will have an impact of the filing fee that Father paid with this case, as will be discussed at a later point herein. *See* Section VIII of this document.

### *Federal Habeas Corpus Statutes*

Habeas corpus actions arrive in federal court by one of three vehicles. These vehicles are not interchangeable. *See generally Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) (finding error where the district court applied the wrong habeas corpus statute's rules). First, if the petitioner is in custody under a state court's order, his or her request for habeas relief is made in a petition under

28 U.S.C. § 2254. The Application in this case does not seek this type of habeas corpus relief, so it will not be analyzed further.

Second, if the person is a criminal defendant who has been convicted and sentenced by a federal district court, then that person (called the movant) may generally seek relief by way of a motion to vacate, set aside, or correct their sentence under 28 U.S.C. § 2255. This section "provides an alternative postconviction remedy for federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 469 (2023). A Section 2255 motion is filed in the relevant criminal case, in the court that sentenced the movant. *See Hueso v. Barnhart*, 948 F.3d 324, 336 (6th Cir. 2020) (referring to "the sentencing court . . . which hears the § 2255 motion").

Third, under some other circumstances, if the person is allegedly in custody in violation of federal law, he or she may seek habeas corpus relief under "the general habeas corpus statute," 28 U.S.C. § 2241. *Hendrix*, 599 U.S. at 469.

The Child and Father seek relief under Sections 2241 and 2255. (App., PageID 116, 121, 134). They also seek relief under Section 2243, which describes some procedural aspects of habeas corpus actions. Further, they seek to proceed under what they say is the Court's "equitable, common law habeas authority." (App., PageID 121, 134, 138). The Court will begin its analysis here.

<u>*No Common Law Habeas Corpus Authority*</u>

Habeas corpus relief in the district courts is governed by specific statutes rather than by common law. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes

enacted by Congress pursuant thereto." *Spisak v. Tibbals*, No. 1:95-cv-2675, 2011 WL 13334345, at *4 (N.D. Ohio Feb. 11, 2011) (quoting *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)). And "[t]here is no provision in the Constitution that expressly grants federal district courts any jurisdiction to issue writs of habeas corpus in the absence of a statute enacted by Congress authorizing such jurisdiction." *U.S. v. Kirkpatrick*, No. 1:96-cr-81, 2009 WL 2823658, at *11 (E.D. Tenn. Aug. 28, 2009). More specifically, "[f]ederal courts under the Constitution do not retain some form of residual common law authority and jurisdiction to issue writs of habeas corpus." *Id*., at *13 (citing *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94-95, 2 L.Ed.2d 554 (1807)) (emphasis added); *Modena v. United States*, No. 1:13-cv-293, 2014 WL 1154612, at *9 (W.D. Mich. Mar. 21, 2014) (quoting *Kirkpatrick*, 2009 WL 2823658, at *10-14) (same).

Thus, although federal courts can consider common law where it is appropriate to do so, common law provides it with no authority to act in a habeas corpus action. "The Supreme Court has long recognized that for the meaning of the term *habeas corpus,* resort may unquestionably be had to the common law; but the power to award the writ by any of the courts of the United States, must be given by written law." *Kirkpatrick*, 2009 WL 2823658, at *13 (quoting *Bollman* and citing *Felker v. Turpin,* 518 U.S. 651, 664 (1996); *Carbo v. United States,* 364 U.S. 611, 614 (1961); and *Souter v. Jones,* 395 F.3d 577, 597 (6th Cir. 2005)) (cleaned up); *Hueso v. Barnhart*, 948 F.3d 324, 326-27 (6th Cir. 2020) (quoting *Bollman* at 94) ("The Supreme Court long ago recognized that 'the power to award the writ [of habeas corpus] by any of the courts of the United States, must be given by written law,' not common law.").

19

Accordingly, the undersigned will consider the habeas corpus claim(s) raised in the Application under the "written law" of the relevant federal habeas corpus statutes, *see* the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), and the appropriate habeas corpus rules. *See generally Lonchar v. Thomas*, 517 U.S. 314, 332 (1996) (concluding that a habeas corpus case "should have been examined within the framework of the Habeas Corpus Rules and settled precedents, not according to generalized equitable considerations outside that framework."). **The undersigned RECOMMENDS that the Court <u>DISMISS</u> Claim #2 of the Application invoking common law habeas corpus jurisdiction and any request for habeas corpus relief under the common law, as this Court does not have such jurisdiction.**

### *Habeas Corpus Rules and the Required Preliminary Review*

District courts manage habeas corpus cases using one of two sets of habeas corpus rules. Which set applies depends on which type of action has been filed. But both sets of rules require this Court to conduct a preliminary review of the contents of a petition or motion seeking habeas corpus relief. *See* Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules") ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition…"); Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (the "2255 Rules") ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . ."). The 2254 Rules apply also to a petition filed under Section 2241. *Cole v.*

*Harry*, No. 1:12-cv-1019, 2012 WL 5306186, at *1 n.1 (W.D. Mich. Oct. 26, 2012); *see also* Rule 1(b) of the 2254 Rules. In addition, the Federal Rules of Civil Procedure may apply to habeas corpus actions, to the extent they are not inconsistent with the habeas statutes or rules. *See* Rule 12 of the 2254 Rules; Rule 12 of the 2255 Rules.

Accordingly, the Court is authorized to dismiss a plainly meritless habeas corpus claim even in the absence of a motion to dismiss. *See Carson v. Burke*, 178 F.3d 434, 437 (6th Cir. 1999) (citing *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993)) ("under Rule 4 of the Rules Governing Section 2254 Cases, district court can summarily dismiss petition without even requiring a response from the government if the petition and exhibits plainly show that the petitioner is not entitled to relief"). "A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false." *Cole,* 2012 WL 5306186, at *1 (citing *Carson*, 178 F.3d at 436-37). Consistent with these principles, the Court's review may consider issues not raised in Defendants' motions to dismiss.

### 2. Proper Applicant/Petitioner

Section 2242 sets out some requirements for a federal habeas corpus application. It provides that an "Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. An application must "allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known." *Id*. Similarly, Rule 2(c)(5) of the 2254 Rules

21

requires a petition to "be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."

These provisions anticipate that the applicant or petitioner in a habeas corpus case is the person in custody. Section 2241, for example, states in relevant part:

> **(c)** The writ of habeas corpus shall not extend to a prisoner unless--
>
> > **(1)** He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> >
> > **(2)** He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> >
> > **(3)** He is in custody in violation of the Constitution or laws or treaties of the United States; or . . .

28 U.S.C. § 2241(c)(1)-(3). *See also* Rule 2 of the 2254 Rules (referring to "the petitioner"). Section 2255 likewise refers to "[a] prisoner in custody" as the movant, as do the 2255 Rules. 28 U.S.C. § 2255(a); Rule 1(a) of the 2255 Rules.

As these authorities suggest, there is generally only one petitioner, applicant, or movant in a habeas corpus proceeding—the person "in custody." Joint applications are generally improper. *Rubinstein v. United States*, No. 23-cv-12685, 2024 WL 37931, at *1 (E.D. Mich. Jan. 3, 2024). For instance, in a case where several prisoners tried to seek habeas corpus relief in the same case, the district court dismissed their claims but advised them they could each file their own petition:

> All seven plaintiffs have filed a joint habeas petition together, but challenge separate and unrelated criminal convictions. It is improper for different petitioners to file a joint habeas petition in which they seek relief from different convictions, sentences, or other forms of detention. *See Norton v. Parke*, 892 F.2d 476, 478 (6th Cir. 1989). "Several applicants can not join in a single petition for a writ of habeas corpus." *U.S. ex rel. Bowe v. Skeen*,

> 107 F. Supp. 879, 881 (N.D.W. Va. 1952). <u>A joint habeas petition involving several petitioners is improper because none of the petitioners has any interest in the illegal restraint of the other petitioners.</u> *In re Kosopud*, 272 F. 330, 332 (N.D. Ohio 1920). . . . Accordingly, the joint petition for writ of habeas corpus is dismissed without prejudice to the plaintiffs each filing their own habeas petition challenging their own convictions.

*Rouse v. Michigan*, No. 2:17-cv-12276, 2017 WL 3394753, *1 (E.D. Mich. Aug. 8, 2017) (emphasis added). *See also In re Kosopud*, 272 F. 330, 332 (N.D. Ohio 1920) ("Obviously these petitioners could not properly file a joint petition, as no one has any interest in the illegal restraint of the other."); *accord Borzych v. Bertrand*, 974 F. Supp. 1220, 1222 (E.D. Wis. 1997) ("Petitions for a writ of habeas corpus are by nature an individual action."); *U.S. ex rel. Bowe v. Skeen*, 107 F. Supp. 879, 881 (N.D.W. Va. 1952) (citing *Kosopud*, 272 F. at 332) ("Several applicants can not join in a single petition for a writ of habeas corpus.").

The Application in this case says that it "is brought on behalf of J.O.B., under the authority of the Father, Mr. Bryant." (App., ¶ 24). The caption lists the Child as plaintiff, and lists Father "as next friend of minor, and on his own behalf." (App., PageID 116). However, the only person who is allegedly restrained is the Child. (*See* App., ¶¶ 3, 10, 41, 67). The Application does not suggest that *Father* is restrained or in custody.

As a result, Father does not have a valid habeas corpus claim *on his own behalf.* *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Stated differently, this Court does not have jurisdiction to consider Father's habeas corpus *on his own behalf*

23

because Father is not in custody. *See Mitchell v. Owens*, No. 12-cv-2859, 2013 WL 2422629, at *5 (W.D. Tenn. June 3, 2013) ("Mitchell is not a prisoner; therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 2241."). It therefore "plainly appears from the petition [that Father] is not entitled to relief in the district court" on Father's claim for habeas corpus relief on his own behalf, because Father is not in custody.[6] *See* Rule 4 of the 2254 Rules. As only the Child is allegedly restrained and potentially in custody, only the Child has a potentially viable habeas corpus claim.

Accordingly, **the Court should conclude that Father may not seek to enforce *his own rights* by way of this habeas corpus action because he is not in custody. The undersigned RECOMMENDS that the Court <u>DISMISS</u> Father's habeas corpus claim *on his own behalf* and consider only the Child's claim.**

One complication is the fact that the Child is a minor. "A minor child cannot bring suit but must act through a proper representative." *Grady v. Madison Cnty., Tennessee*, No. 1:19-cv-1153, 2020 WL 3036891, at *5 (W.D. Tenn. June 5, 2020) (citing Fed. R. Civ. P. 17(c) and other authority). Here, Father claims to proceed as the Child's "next friend."[7] (App., PageID 116; *see also* ¶ 24 ("This action is brought on behalf of J.O.B., under the authority of her Father, Mr. Bryant.")).

---

[6] If Father is, in fact, restrained and "in custody," he may file his own separate habeas corpus action. *See Rouse*, 2017 WL 3394753, *1; *Rubenstein*, 2024 WL 37931, at *3 (concluding that only the first petitioner in a joint habeas petition was a proper party and dismissing all others and their claims, on the basis of misjoinder, without prejudice to them filing their own petitions).

[7] "Rule 17(c) of the Federal Rules of Civil Procedure allows an action to be brought on behalf of a minor by 'a general guardian' or if the minor 'does not have a duly appointed representative . . . by a next friend.'" *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 407 n.4 (6th Cir. 2019).

"A 'next friend' is 'someone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian.'" *Grady*, 2020 WL 3036891, at *6 (W.D. Tenn. June 5, 2020) (citing Black's Law Dictionary (11th ed. 2019)) (cleaned up). "The 'next friend' doctrine is a device to determine when a motion for collateral relief brought by a person who does not have standing to pursue that relief should be deemed brought by a person who does." *Cardin v. United States*, 947 F.3d 373, 376 (6th Cir. 2020). Here, Father has not filed a

---

A parent may be considered a "general guardian." *See generally In re Brooks*, 583 B.R. 443, 444-45 (Bankr. W.D. Mich. 2018) (concluding, based on testimony and review of a custody order indicating shared custody, that the movant was the plaintiff's father, "and therefore a general guardian"); *Greer v. City of Highland Park*, No. 15-cv-12444, 2019 WL 578550, at *2 (E.D. Mich. Jan. 10, 2019); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 26 F. Supp. 2d 1001, 1006 (W.D. Mich. 1998) (Rule 17(c) "provides that a general guardian may sue on behalf of a minor. A parent is a guardian who may so sue."); *Bender v. Metro. Nashville Bd. of Educ.*, No. 3:13-cv-0470, 2013 WL 3777197, at *3 (M.D. Tenn. July 18, 2013) ("Under Rule 17(c) of the Federal Rules of Civil Procedure, a parent or guardian may bring suit on behalf of his or her minor child.")

In this case, Father submitted with the Application an apparent copy of a "Stipulation Concerning Temporary Parenting Time and Decision Making" filed on December 30, 2020, in Arapahoe County Court Case No. 2020DR79. (ECF No. 5-2, PageID 141-144). The briefing in this case indicates that Mother and Father litigated further in that court and in the Greene County Court. (*See, e.g.*, Bursek Motion to Dismiss, ECF No. 15, PageID 238 (noting that "the [Arapahoe County] Custody Case was recently transferred to the Court of Common Pleas for Green[e] County, Ohio"); 2nd Judicial Notice, ECF No. 17-1 and 17-2, PageID 254-258 (attaching an order from the Greene County Court dismissing Father's complaint for legal custody and a motion to stay under the Servicemember's Civil Relief Act filed in the Arapahoe County Court); Fed. Defs. Motion to Dismiss, ECF No. 23, PageID 306 ("Plaintiff Bryant has already litigated custody of Plaintiff J.O.B. with Capt. Angel and lost." )). Father disputes this last point, responding that "no valid determination on custody has been rendered in any court of competent jurisdiction." (Resp. to Fed. Def. Motion to Dismiss, ECF No. 25, PageID 323).

The undersigned does not have sufficient information to understand the current status of Father and Mother's respective parental rights and whether the Child has a duly appointed representative, and/or one or two general guardians. In any event, if Father were to proceed simply as a parent and general guardian, he would need to retain counsel to proceed on the Child's behalf. *See Woods on behalf of A.L.D. v. Comm'r of Soc. Sec.*, No. 3:16-cv-503, 2018 WL 773925, at *3 (S.D. Ohio Feb. 8, 2018) ("As a general rule, a parent or legal guardian cannot represent a minor or incompetent litigant in federal court proceedings without an attorney."); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative."). But because Father indicates he proceeds as next friend, however, this issue need not be resolved at this time.

formal request for next friend status but appears to claim it solely by virtue of the fact that he is the minor Child's father. (App., PageID 116; *see also* ¶ 24).

"Next friend" filing is available in habeas corpus cases. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or *by someone acting in his behalf*") (emphasis added). But it is not automatic:

> [F]or present purposes, "next friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another. Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. *Davis v. Austin,* 492 F.Supp. 273, 275-276 (ND Ga.1980) (minister and first cousin of prisoner denied "next friend" standing). The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

*Whitmore v. Arkansas*, 495 U.S. 149, 163-64 (1990) (some internal citations omitted). Although Father has not expressly addressed these factors and they may be subject to dispute, the undersigned concludes that this issue need not be resolved at this time. Therefore, the undersigned will presume for purposes of this review that Father may file as next friend for the Child and may raise the Child's habeas corpus claim.

As the authorities cited above suggest, this does not mean that Father himself is a petitioner or party to this case. The Supreme Court has said that "a next friend 'does not himself become a party to the habeas corpus action in which he participates, but simply

pursues the cause on behalf of the detained person, who remains the real party in interest.'" *Cardin v. United States*, 947 F.3d 373, 376 (6th Cir. 2020) (quoting *Whitmore*, 495 U.S. at 163). Accordingly, **if this Report and Recommendation is adopted then Father should be identified as "next friend" on the docket and in any future filings, rather than as plaintiff or petitioner.**

Going forward, this Report and Recommendation will consider only *the Child's* habeas corpus claim.

### 3. Applicable Statutory Section(s)

The undersigned turns next to the habeas corpus statutes invoked in the Application—Sections 2241, 2243, and 2255. (App., PageID 116, 121, 134, 138). As noted above, Section 2241 and Section 2255 describe different types of requests for habeas corpus relief. By contrast, Section 2243 describes some procedures applicable to habeas corpus actions but is not itself an independent and distinct source of habeas corpus authority. *See Taylor v. Owens*, 990 F.3d 493, 498 (6th Cir. 2021) ("section 2243 . . . describes how a court 'entertaining an application for a writ of habeas corpus' should determine the merits—i.e., exercise its jurisdiction"). Thus, while § 2243 may potentially be relevant to habeas corpus cases brought under the other sections, there is no free-standing habeas corpus claim to be made under Section 2243. **The undersigned therefore RECOMMENDS that the Court <u>DISMISS</u> any claim for habeas corpus relief brought under Section 2243.**

That leaves Sections 2241 and 2255, which are the "two avenues for federal prisoners challenging their confinement." *Taylor v. Owens*, 990 F.3d 493, 495 (6th Cir.

27

2021). As between the two sections, "[a] workable division has developed: the sentencing district has jurisdiction over claims . . . under section 2255, and the custodial district maintains jurisdiction . . . under section 2241." *See Berry v. United States*, No. 05-cv-20048, 2014 WL 6675415, at *4 (E.D. Mich. Sept. 4, 2014), *report and recommendation rejected on other grounds*, 2014 WL 6668488 (E.D. Mich. Nov. 24, 2014) (citing inter alia *Reminsky v. United States*, 523 F. App'x 327, 328 (6th Cir. 2013) *and Charles v. Chandler*, 180 F.3d 753, 755 (6th Cir. 1999)). It is necessary to distinguish between these types of relief because they are analyzed under different standards, raised against different respondents, governed by different procedural rules, and generally filed in different places. And, "[b]oth sections contain provisions that explicitly govern jurisdiction." *Taylor v. Owens*, 990 F.3d 493, 499 (6th Cir. 2021).

### *Section 2255*

Section 2255 is arguably the more straightforward of the two sections. Section 2255 allows a prisoner who has been sentenced in federal court to ask the sentencing court to "vacate, set aside or correct" the sentence that federal court previously imposed. The statute says, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*,

28

599 U.S. 465, 472 (2023). It "is the ordinary vehicle for a collateral attack on a federal sentence." *Id.* at 477.

> The United States Court of Appeals for the Sixth Circuit has explained:
>
> Section 2255 allows prisoners to petition their sentencing court to correct or invalidate sentences imposed upon them <u>provided that they are "in custody under a sentence of a court established by Act of Congress"</u> and provided that they make their petitions prior to the expiration of a one-year statute of limitations. 28 U.S.C. § 2255. <u>A prisoner is in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him.</u>

*Ospina v. United States*, 386 F.3d 750, 752 (6th Cir. 2004) (emphasis added). *See also Whiteside v. United States*, No. 1:20-cv-1127, 2020 WL 5636896, at *1 (W.D. Tenn. Sept. 21, 2020) ("A prisoner requesting relief pursuant to § 2255 must be 'in custody under sentence of a court established by Act of Congress[.]' 28 U.S.C. § 2255(a)."); *McKinnie v. United States*, No. 2:14-cr-20171-SHM-10, 2022 WL 17327507, at *3 (W.D. Tenn. Nov. 29, 2022) (citing *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984)) ("A prisoner is in custody for purposes of § 2255 when he is incarcerated in federal or state prison, provided a federal court has sentenced him.").[8]

The Application in this case does not allege that the Child has been convicted and sentenced by a federal court (i.e., is a "prisoner in custody under sentence of a court established by Act of Congress") or any other court. Instead, it asserts:

---

[8] "[C]ase law has held that being a 'prisoner in custody' is more broadly defined than simply incarcerated persons." *Bradley v. United States*, No. 13-cr-20622, 2016 WL 11468693, at *3 (E.D. Mich. Aug. 9, 2016). "Persons serving a term of supervised release, serving consecutive sentences, serving a probationary or parole term are considered to be 'in custody' for purposes of habeas petitions under § 2254 or § 2255." *Id.* (citing, *e.g., Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). This is explored more in Section V.B.1.

29

> Petitioner, J.O.B. is a 4-year-old citizen of the United States of America
> ("U.S.A"), born in the state of Colorado, who is being unlawfully restrained
> by the USAF under the National Security Act, title 50 Chapter 15.

(App., ¶ 3; *see also* ¶ 24). Logically, the Child cannot file a motion to vacate his or her

sentence in the federal court that sentenced him or her if no federal court has sentenced

him or her. There is no suggestion here that the Child has been convicted of a federal

crime and sentenced. More to the point, *this Court* has not sentenced the Child and

therefore does not have jurisdiction to consider a § 2255 motion filed on his or her behalf.

*See Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004) ("Congress enacted

§ 2255 as a means of ensuring a simpler method of review by vesting jurisdiction in the

sentencing jurisdiction, which already has a record of the case"). By its plain terms,

Section 2255 does not apply to the Child. **The undersigned therefore RECOMMENDS**

**that the Court <u>DISMISS</u> any claim for habeas corpus relief brought under Section**

**2255 for lack of jurisdiction.**

<u>*Section 2241*</u>

Section 2241 is sometimes referred to as the "general habeas corpus statute."

*Hendrix*, 599 U.S. at 469. It may be used under certain circumstances by "a prisoner . . .

in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2241(c)(3). "[S]ection 2241 typically facilitates only challenges to 'the

execution or manner in which the sentence is served'—those things occurring within

prison." *Taylor v. Owens*, 990 F.3d 493, 495 (6th Cir. 2021) (quoting *Charles v.*

*Chandler*, 180 F.3d 753, 755-56 (6th Cir. 1999) (per curiam)).

The parties address to some extent the issue of whether the Child is "in custody" in their briefing on the motions to dismiss. That issue is addressed below. *See* Section V.B.1. But the parties say little about the applicability of Section 2241 itself. For the purposes of this Rule 4 preliminary review of the Application, the undersigned will assume *arguendo* that Section 2241 could potentially apply to the Child.

A petition under Section 2241 "shall be filed in the court having jurisdiction over the prisoner's custodian." *Dentley v. FCI Warden Bowers*, No. 2:22-cv-2863, 2024 WL 289010, at *2 (W.D. Tenn. Jan. 25, 2024). This question "breaks down into two related sub[-]questions. First, who is the proper respondent to that petition? And second, does the [district court] have jurisdiction over him or her?" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).

### 4.     Proper Respondent

A habeas corpus application/petition under Section 2241 names a "Respondent" rather than a "Defendant." *See* Rule 2(a) of the 2254 Rules ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the . . . officer who has custody."). In the usual habeas corpus challenge to "present physical confinement," the "immediate custodian" having physical custody of petitioner is the proper respondent. *Padilla*, 542 U.S. at 439. "Generally this means . . . the warden of the facility where the prisoner is being held." *Holder v. Curley*, 749 F. Supp. 2d 644, 645 (E.D. Mich. 2010); *see also Gilmore v. Ebbert*, 895 F.3d 834, 837 (6th Cir. 2018) (quoting *Padilla*, 542 U.S. at 435) (same).

Courts consider who the "immediate custodian" is in a fairly concrete way, by asking who is physically in control of the petitioner. After all, "[h]abeas corpus literally means in Latin '(that) you have the body.'" *Corridore v. Washington*, 71 F.4th 491, 494 (6th Cir. 2023) (quoting *Clements v. Florida*, 59 F.4th 1204, 1218 (11th Cir. 2023) (Newsom, J., concurring)) (cleaned up). In these situations, federal courts do not engage in a more abstract inquiry about who may have caused the custody (like a judge) or played a part in it (like a witness or a prosecutor), or who benefits from or gets justice because of the custody (like a victim). *See Drexler v. Spahn*, No. 21-1368, 2022 WL 17333076, at *2 n.2 (10th Cir. Nov. 30, 2022) (noting that state-court judges "were not proper respondents for the habeas action."); *Dock v. McAninch*, 64 F.3d 662 (6th Cir. 1995) (ordering a prosecutor to be dismissed from a habeas corpus case, as he was "not a proper respondent in this action."); *Hull v. Hull*, No. 3:21-cv-45, 2021 WL 1244301, at *3 n.1 (D. Alaska Apr. 2, 2021) ("The proper respondent in a habeas proceeding is the petitioner's custodian, not another party in a state civil case, the state court judge, or a city or state government.").

Instead, as the Supreme Court has said, the statute "straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained")." *Padilla*, 542 U.S. at 434. And it is only one person:

> The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition. This custodian, moreover, is "the person" with

32

the ability to produce the prisoner's body before the habeas court. *Ibid.* We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales v. Whitney*, 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885) (emphasis added); *see also Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) ("The writ of habeas corpus" acts upon "the person who holds [the detainee] in what is alleged to be unlawful custody," citing *Wales, supra,* at 574, 5 S.Ct. 1050); *Braden, supra,* at 495, 93 S.Ct. 1123 ("'[T]his writ . . . is directed to . . . [the] jailer,'" quoting *In re Jackson*, 15 Mich. 417, 439-440 (1867)).

*Id*. at 434-35 (emphasis added).

In this case, the Application asserts that:

- "J.O.B. . . . is being unlawfully restrained by the USAF" (App., ¶ 3).

- "members of the USAF, along with former service member Mr. Bursek, acted collectively, on April 13th, 2022, during set hearing, when Mr. Bursek refused to disclose J.O.B. whereabouts to the Judge, . . . which . . . effectively restrained J.O.B." (App., ¶ 10).

- "the state court . . . collectively acted with the USAF, by and thru Mr. Bursek, by continuing its fraud upon the court at April 13th 2022, wherein Ms. Angel failed to appear, which ultimately, deprived Mr. Bryant and J.O.B. of substantive due process, unlawfully restrained J.O.B." (App., ¶ 41).

- "the state court, Mr. Bursek, and USAF, collectively, unlawfully restrained J.O.B[.]"  (App., ¶ 67).

However, the Application also repeatedly indicates that *Mother* is the immediate physical custodian of the Child. Indeed, Father's essential contention is that Mother has refused to make the Child available to Father to exercise his parenting time. The Application says, for example, that there is or was a custody agreement between Father and Mother, and the Child is not with Father. (*See* App., ¶ 2 (custody agreement); ¶ 6 (referring to the

33

"separation of Mr. Bryant of his Child"); *see also* ¶¶ 40, 48 (referring to the custody agreement)). The Application alleges that Mother "refused to comply with the standing custody order" and "relocated to Ohio with J.O.B." (App., ¶¶ 7-8). It refers to Father's "allegations that Ms. Angel had unlawfully abducted J.O.B. out of the state of Colorado to Ohio." (App., ¶ 9, *see also* ¶¶ 45-46). It also says that Mother "was assigned to Wright Patterson Air Force Base and the restraint of [the Child] . . . occurred in this District[.]" (App., ¶ 22).

In addition, Father attaches an excerpt of a transcript to the Application in which Attorney Bursek specifically says: "The child's with Mom." (App., ¶ 42; Exhibit O to App., ECF No. 5-19, PageID 198-199). Although the Child and Father find fault with Attorney Bursek's refusal to say more, they do not dispute that the Child is in fact with Mother. (App., ¶¶ 42-46).

Father also attached to the Application a form that he apparently signed in which he contends that USAF "has prevented Capt Angel from complying with parenting provisions of a Colorado Court order." (Exhibit B, ECF No. 5-3, PageID 145-146). "Cpt. Angel also states this claimant has been banned from all US military bases by the US AirForce, which prevents claimant from retrieving his child *from Cpt. Angel*." (*Id.*) (emphasis added).

Finally, Father attached to the Application many pages of a "Record Generated By TalkingParents," which appears to contain conversations between Father and Mother over a period of time. (*See* Exhibits C & C1, ECF Nos. 5-4 & 5-5, PageID 147-161). This record makes clear that Mother has physical custody of the Child. (*See, e.g.*, PageID 161

(Father says to Mother: "You[] have unlawfully imprisoned her from the custody of her Father. [The Child] has a right to be in the custody and care of her Father. Please release her back into my custody.").

The undersigned concludes that Father's first set of assertions concerning Attorney Bursek, the Colorado state court, the USAF, and "members of the USAF" (i.e., the bulletpoints listed above) are *legal conclusions* about who is responsible for *causing* the Child to be in Mother's custody. In contrast, the second set of allegations about Mother are *factual* allegations that describe Mother as the immediate physical custodian of the Child. Because Mother appears to be "the person who has custody over" the Child, 28 U.S.C. § 2242, Mother is the only potentially proper respondent in this case.[9]

The Court can reach the same result by another path. As noted, the caption of the Application lists four respondents (labelled defendants):  United States of America, Secretary Kendall, Mother, and Attorney Bursek. (App., PageID 116, 122-123). The Colorado state court is not named as a respondent, and neither are the other "members of the USAF." (App., ¶ 10).

The United States of America is not the proper respondent in a habeas corpus action brought under Section 2241. *See Tennebar v. United States*, No. 1:22-cv-403, 2022 WL 17250295, at *2 (S.D. Ohio Nov. 28, 2022) (Cole, J.) (citing 28 U.S.C. § 2243 and *De Los Santos v. United States*, 133 F. App'x 992, 992-93 (6th Cir. 2005)) (holding that

---

[9] This is not a conclusion that Mother validly has "custody" in terms of the parents' respective parental rights as determined by the Arapahoe County Court or the Greene County Court. The undersigned makes no determination on that issue.

35

"the 'United States of America' is not a proper respondent for [petitioner's] habeas

corpus petition" and dismissing because petitioner failed to name the proper respondent).

Secretary Kendall is also not the proper respondent. He is mentioned only twice in

the Application, namely in the caption and in Paragraph 27, which says:

> Defendant Frank Kendall, in his official capacity, is the 26th Secretary of
> the Air Force responsible for organizing, training, and equipping the U.S.
> Air and Space Forces, and is by statute responsible for and has the authority
> to conduct all the affairs of the Department of the Air Force.

(App., PageID 116, 123). The Application does not allege that Secretary Kendall has

immediate physical custody of the Child, and nothing otherwise suggests that he does.

The undersigned acknowledges the implicit argument that Secretary Kendall has

control of the Air Force; the Air Force has control of Mother because she is an officer;

and Mother has custody of the Child—so therefore Secretary Kendall can be said to have

control or custody of the Child. But that is not the analysis used to determine who is a

proper respondent in a case concerning present physical custody. As the United States

Supreme Court has held:

> [L]ongstanding practice confirms that in habeas challenges to present
> physical confinement-"core challenges"-the default rule is that the proper
> respondent is the warden of the facility where the prisoner is being held, not
> the Attorney General or some other remote supervisory official.

*Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Applying the "immediate custodian rule,"

the Supreme Court in *Padilla* rejected an argument that the Secretary of Defense was the

proper respondent. *Id*. at 436 (citing *Al-Marri v. [Secretary] Rumsfeld,* 360 F.3d 707,

708-709 (C.A.7 2004) (Secretary of Defense not the proper respondent) and *Monk v.*

36

*Secretary of the Navy,* 793 F.2d 364, 369 (C.A.D.C.1986) (Secretary of the Navy not the proper respondent)). Secretary Kendall is likewise not the proper respondent here.

The alternative "legal control" test does not apply in this case. *Padilla* recognized that where there is no immediate physical custodian, "the party exercising legal control" could be the proper respondent. *Id.* at 439. That is not what is alleged here. The Child and Father assert that the Child is subject to "continuing unlawful restraint." (App., ¶ 59). They seek the Child's "immediate release from restraint." (App., PageID 139). As discussed above, the Child is in Mother's immediate physical custody, meaning that there *is* an immediate physical custodian for these purposes. The general rule—the immediate custodian rule—therefore applies. Accordingly, Secretary Kendall, a "remote supervisory official" (*see* App., ¶ 27), is not the proper respondent.

Finally, Attorney Bursek is not the proper respondent. The Application alleges that his actions caused or contributed to the Child's restraint, but it notably does not allege that Bursek himself ever had physical custody of the Child. (*See, e.g.*, App., ¶¶ 8-10; *cf.* Bursek Motion to Dismiss, ECF No. 15, PageID 235; Bursek Reply, ECF No. 24, PageID 316 n.2). Moreover, the Child is apparently in Ohio, while Bursek is in Colorado. (*See* App., ¶¶ 5, 9, 29 (Bursek "is a licensed attorney that resides within the State of COLORADO") (as in original)). There is no allegation in the Petition that Bursek was ever even in Ohio. He argues as much in his motion to dismiss. (*See* ECF No. 15, PageID 235). The Child and Father do not dispute this particular assertion in their response. (*See* ECF No. 22, PageID 293-296).

While Father wishes to assign blame or liability to Bursek or the other Defendants for their parts in the alleged deprivation of rights, that is not the purpose of a habeas corpus action and is not relevant to the question of who is the proper respondent under *Padilla*. When these named parties are excluded, only Mother remains.

**The undersigned therefore recommends that the Court <u>DISMISS</u> the habeas corpus claims against the United States of America, Secretary Kendall, and Attorney Bursek as they are not proper respondents.**[10] Going forward, the undersigned considers only the Child's habeas corpus claim against Respondent Mother.

### *Jurisdiction over Mother*

"District courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Padilla,* 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). This means that a district court must have jurisdiction over the petitioner's custodian to proceed. *Id*. (citing *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)). Although Mother's whereabouts are not entirely clear, it appears that this Court has jurisdiction over Mother for purposes of this preliminary review under Rule 4 of the 2254 Rules.

Father does not provide Mother's address, but the Application does allege that Mother is or "was assigned to Wright Patterson Air Force Base and the restraint of [the Child] occurred in this District." (App., ¶ 22). Wright-Patterson Air Force Base ("WPAFB") "is located northeast of Dayton, Ohio, and encompasses parts of Greene and

---

[10] Because the United States is not the proper respondent and should be dismissed from the case, the Application's citation to 28 U.S.C. § 1346, entitled "United States as defendant" will not be further considered. The undersigned notes parenthetically that the Colorado federal court mentioned this statute one of its decisions. *See Bryant v. Mclean*, No. 23-cv-997-NYW-KAS, 2024 WL 809897, at *11-12 (D. Colo. Feb. 27, 2024), *report and recommendation adopted,* 2024 WL 1195326 (D. Colo. Mar. 20, 2024).

Montgomery counties."[11] Both Greene and Montgomery counties are served by the

District Court for the Southern District of Ohio. 28 U.S.C. § 115(b)(1). The Child and

Father also alleged that Mother and the Child "were permanent residents in Ohio" while

the Colorado state proceedings were occurring. (*See* ECF No. 22, PageID 294).

Accordingly, and in the absence of argument to the contrary, the undersigned will

proceed at this time presuming that this Court has jurisdiction over Respondent Mother.

With these initial issues resolved, the undersigned turns to the central dispute in the case.

### B.  Subject-Matter Jurisdiction and Other Jurisdictional Issues

As a general matter, and as a starting point for this discussion, it is clear that this

Court has subject-matter jurisdiction to consider petitions seeking writs of habeas corpus

brought under 28 U.S.C. § 2241. *See Mann v. Jones*, 341 F. App'x 158, 163 (6th Cir.

2009). This does not mean, however, that every issue may appropriately be raised in a

Section 2241 action. Some matters are outside the scope of the Court's habeas corpus

authority, and other limitations may apply. *See generally Williams v. Stegall*, 945 F.

Supp. 145, 147 (E.D. Mich. 1996) (although district courts have jurisdiction over actions

arising under federal law, "this general federal question jurisdiction statute is subject to

limitations contained in other statutory schemes"). These issues are discussed below.

### 1.  Children in parents' custody

In the Federal Defendants' motion to dismiss, they argue that "federal habeas has

never been available to challenge parental rights or child custody." (ECF No. 23, PageID

---

[11] *See* https://www.wpafb.af.mil/Welcome/Fact-Sheets/Display/Article/1146061/wright-patterson-air-force-base/ (last visited August 27, 2024).

306-307). Mother quotes *Hall v. The Beast*, 116 Fed. App'x. 557, 559 (6th Cir. 2004), which in turn relied on the United States Supreme Court's decision *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502 (1982), the leading case on the subject.

### *The* Lehman *Case*

In *Lehman*, a state court had terminated a mother's parental rights with respect to her three sons. She then sought a writ of habeas corpus in federal court under Sections 2254 and 2241. *Id*. at 504-505. The *Lehman* decision considered "whether the habeas corpus statute, 28 U.S.C. § 2254, confers jurisdiction on the federal courts to consider collateral challenges to state-court judgments involuntarily terminating parental rights." *Id*. at 503. The Supreme Court concluded that Section 2254 did not.

In the case currently before the Court, the Child and Father acknowledge *Lehman* but attempt to distinguish it factually. (ECF No. 22, PageID 284). They note that Father's parental rights were not terminated like the Mother in *Lehman*. (*See id.*). Also, the Application here does not seek a writ of habeas corpus under Section 2254, which is the section that applies to "person[s] in custody pursuant to the judgment of a <u>State</u> court." 28 U.S.C. § 2254 (emphasis added). As they have chosen not to seek habeas corpus relief under this section, *Lehman* is not fully on point.[12]

---

[12] If the Court were to look beyond the label attached to the claim to its substance, it appears that the Application in this case does challenge, criticize, and ask this Court to do something different than, the decisions of the Arapahoe County Court. For instance, the Application says:

- "the [Arapahoe County Court] lacked sufficient legal basis to proceed in the case and unlawfully proceeded in the case wholly without jurisdiction based upon deficient service." (App., ¶ 32).

*Lehman* is instructive, however. It discusses an issue that Sections 2254 and 2241 have in common—the requirement that the petitioner be "in custody." While noting that the concept of custody has been extended to a set of situations beyond incarcerated prisoners—such as to a parolee or a person released on his own recognizance before beginning to serve his sentence—the Supreme Court in *Lehman* recognized that habeas corpus is *not* an available remedy for all alleged constitutional violations:

> [A]lthough the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, <u>the Court has never considered it a generally available federal remedy for every violation of federal</u> rights. Instead, <u>past decisions have limited the writ's availability to challenges to state-court judgments in situations where—as a result of a state-court criminal conviction—a petitioner has suffered substantial restraints not shared by the public generally</u>. In addition, in each of these cases the Court considered whether the habeas petitioner was "in custody" within the meaning of § 2254.
>
> Ms. Lehman argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. <u>Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system</u>. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order

---

- "the state court lacked personal and subject matter jurisdiction to proceed in the case, and consequently, all judgement issues by the state court are void ab initio, as a matter of law." (App., ¶ 30).

- "the state court was wholly without jurisdiction to order [Father] to 'status conference' and to attend 'mediation' after the 63-day time limit [for service] had already expired." (App., ¶ 37).

- "all orders issued by the state court, as a result of adjudicating Ms. Angel complaint, are void based upon insufficient service." (App., ¶ 39).

The Application also asks this Court to "[e]njoin USAF from moving or transferring [the Child] from the District of Ohio, or from delivering or releasing [the Child] into the custody of anyone except [Father.]" (App., PageID 139). Were the Court to do this, it appears the Court would be issuing an order directly contrary to the Arapahoe County Court's orders. A challenge to the Arapahoe County Court's judgment(s) under Section 2254 would be analogous to *Lehman* in all material respects and would fail for the reasons described in that case.

41

of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* and *Jones*, and they suffer no "collateral consequences"—like those in *Carafas*—sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.

Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody. Indeed, in two cases, the Court refused to allow the writ in such instances. *Matters v. Ryan*, 249 U.S. 375, 39 S.Ct. 315, 63 L.Ed. 654 (1919); *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890). These decisions rest on the absence of a federal question, but the opinions suggest that federal habeas corpus is not available to challenge child custody. Moreover, federal courts consistently have shown special solicitude for state interests "in the field of family and family-property arrangements." *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 507, 16 L.Ed.2d 404 (1966). Under these circumstances, extending the federal writ to challenges to state child-custody decisions—challenges based on alleged constitutional defects collateral to the actual custody decision—would be an unprecedented expansion of the jurisdiction of the lower federal courts.

*Lehman*, 458 U.S. at 508-12 (footnotes omitted and emphasis added).

### *The "In Custody" Standard*

In the years since *Lehman*, the statutory "in custody" requirement has solidified but not significantly expanded. In 1989, the Supreme Court said:

We have interpreted the statutory language [in § 2241] as requiring that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. See *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968). . . .

Our interpretation of the "in custody" language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus. In *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), for example, we held that a prisoner who had been placed on parole was still "in custody" under his unexpired sentence. We reasoned that the petitioner's release from physical confinement under the sentence in question was not unconditional; instead, it was explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities. *Id.,* at 242, 83 S.Ct., at 376-377; see also *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara County,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). . . .

The question presented by this case is whether a habeas petitioner remains "in custody" under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted. We hold that it does not. <u>While we have very liberally construed the "in custody" requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction.</u>

*Maleng v. Cook*, 490 U.S. 488, 490-92 (1989).[13] *Cf. Corridore v. Washington*, 71 F.4th 491, 495 (6th Cir. 2023) (internal citations omitted) ("we've typically found that a petitioner is 'in custody' when 'the government exercise[s] direct control' over a petitioner's actions—even when the petitioner isn't behind bars. . . . But not all restraints on liberty are severe enough to meet the 'in custody' requirement.").

---

[13] The undersigned notes that state pre-trial detainees—who have not yet been tried—may under some circumstances utilize Section 2241 to seek habeas corpus relief. *See Winburn v. Nagy*, 956 F.3d 909, 911 (6th Cir. 2020) (describing "state pretrial detainees as the rare state prisoners entitled to use § 2241"). That these detainees have not yet been convicted does not preclude them from using Section 2241 based on this language in *Maleng*, but that is because they are, in fact, detained. *But see Delk v. Atkinson*, 665 F.2d 90, 93 (6th Cir. 1981) (broadly stating that "[o]ne who has been released on bail while awaiting trial is in 'custody' for the purposes of § 2241.").

Consistent with these authorities, courts have considered some non-incarcerated persons as "in custody" for habeas purposes, including, for example, a person released on parole (*Jones v. Cunningham*, 371 U.S. 236 (1963)); a person on probation, even where the term was stayed (*McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989)); a person subject to state post-release control or federal supervised release (*see In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016)); and a person who had been released on his own recognizance after conviction but before starting to serve his sentence (*Hensley v. Municipal Court*, 411 U.S. 345 (973)). However, a person released from prison and discharged from parole, but "subject to lifetime sex-offender registration and electronic monitoring," was recently found *not* to be in custody. *Corridore*, 71 F.4th at 493; *see also Hautzenroeder v. DeWine*, 887 F.3d 737, 741 (6th Cir. 2018).

The common thread running through all these scenarios is the petitioner's interaction with a criminal justice system.[14] *Lehman* relevantly distinguished between this criminal justice system custody and parental custody. 458 U.S. at 510 (rejecting a mother's claim "that her sons are involuntarily in the custody of the State . . . because they are in foster homes pursuant to an order issued by a state court," saying: "Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state

---

[14] This is not to suggest that *only* interactions with a criminal justice system can support a habeas corpus claim. *See, e.g., Hango v. McAleenan*, No. 1:19-cv-606, 2019 WL 7944352 (N.D. Ohio Nov. 13, 2019), *report and recommendation adopted*, 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019) (considering a habeas corpus claim of a person in the United States on a student visa, who was in custody and facing deportation because he did not attend school and therefore "failed to maintain his student status"). It is not necessary to fully define the scope of the "in custody" requirement here, given that the Supreme Court has clearly said that parental custody is outside of it.

44

criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments.").

In fact, the Supreme Court in *Lehman* described a child in parental custody as being "at liberty in the custody of a foster parent pursuant to a court order." *Id*. at 511, n.12 (emphasis added). The Court distinguished that child from "a child [that] is actually confined in a state institution." *Id*. Thus, a child at liberty in their parent's custody—like the children in *Lehman* in their foster parents' custody—is not "in custody" as the habeas corpus statutes require. *Id*. at 510. *Lehman's* analysis should apply here, given that the Supreme Court treated foster parents and natural parents similarly. *Id*. (observing that Ms. Lehman's children "are in the 'custody' of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents."); *see also Anderson v. State of Colo.*, 793 F.2d 262, 263 (10th Cir. 1986) (where father sought a federal "writ of habeas corpus directing that his son be returned to his custody," the appellate court found that district court correctly applied the *Lehman* analysis and affirmed, stating that the father "may not use federal habeas corpus as a vehicle to undo the custody decision of the Colorado court.").

As in *Lehman*, the Child (age four at the time the Application was filed) is not a prisoner and not actually confined in an institution, at least as far as the parties have told the Court.[15] (App., ¶ 3). Nor are there any allegation that the Child is subject to any

---

[15] The undersigned observes here that the Application does not actually assert that the Child is "in custody." The Application asserts that the Child is being "restrained," "effectively restrained," or "unlawfully restrained," resulting in a "forced separation" or "needlessly cruel separation" between

"restrictions imposed by a . . . criminal justice system." *Lehman* at 510. In the words of

*Maleng*, the Child "suffers no present restraint from a conviction." 490 U.S. at 492. And,

as in *Hensley*, the Child has not been convicted but is free on bond while the conviction is

appealed. 411 U.S. at 346-47.

There are also no facts pled to indicate that the Child is subject to "significant"

post-release "restraints on [the Child's] liberty" that are "not shared by the public

generally." *Jones v. Cunningham*, 371 U.S. 236, 238, 240, 242 (1963); *see also Hensley*,

411 U.S. at 351. *Lehman* said as much about the children in that case: "they suffer no

unusual restraints not imposed on other children. They certainly suffer no restraint on

liberty as that term is used in *Hensley* and *Jones*." 458 U.S. at 511.

Instead, the Child is "at liberty" in the custody of one parent and is apparently

subject to a state <u>civil</u> court determination concerning Father and Mother's respective

parenting time rights. Although the parents may disagree on which order is the effective

---

Father and the Child. (*See* App., ¶¶ 3, 6, 10, 12, 24, 25, 30, 41, 52, 56, 59, 63, 64, 66, 67). The Application begins by seeking (among other things) to "secure release of [the Child] from unlawful restraint and the reunification of" Father and the Child. (App., PageID 116).

Even if the Court were to conclude that a writ of habeas corpus was available and warranted, a writ of habeas corpus cannot be used to order *reunification* of two people. Habeas corpus is intended to *release* a person from unconstitutional custody, not to order a person into the petitioner's—or someone else's— preferred custody. Put another way:

> The power of a federal habeas court "lies to enforce the right of personal liberty." *Fay v. Noia,* 372 U.S. 391, 430, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *overruled on other grounds by Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As such, <u>a habeas court "has the power to release" a prisoner, but "has no other power[.]"</u> *Id.* at 431, 83 S.Ct. 822. "[I]t cannot revise the state court judgment; it can act only on the body of the petitioner." *Id.*

*Douglas v. Jacquez*, 626 F.3d 501, 504 (9th Cir. 2010) (emphasis added). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention") (emphasis in original).

one, neither they nor the other parties have suggested that the Child's actions are being controlled by a criminal justice system.

The Child also would not be considered in custody under the Sixth Circuit's more colloquial articulation of the "in custody" standard. That court recently noted that, "[f]ollowing the Supreme Court's lead, we've typically found that a petitioner is 'in custody' when 'the government exercise[s] direct control' over a petitioner's actions— even when the petitioner isn't behind bars." *Corridore v. Washington*, 71 F.4th 491, 495 (6th Cir. 2023) (quoting *Hautzenroeder v. DeWine*, 887 F.3d 737, 741 (6th Cir. 2018)).

Here, there is no evidence, allegation, or suggestion that the government is *directly* controlling *the Child's* actions. There is an allegation that the USAF (or members of the USAF) attempted to influence the Arapahoe County Court, which "effectively restrained" the Child. Father alleges that:

> members of the USAF, along with former service member Mr. Bursek, acted collectively, on April 13th, 2022, during set hearing, when Mr. Bursek refused to disclose [the Child's] whereabouts to the Judge, and successfully invoked claim of national security, which ultimately, deprived the state court of jurisdiction, and effectively restrained [the Child.]

(App., ¶ 10). Considering all the standards and examples discussed in this section, Father's rhetorical flourish here does not convince undersigned that the United States Air Force—through a servicemember advising Attorney Bursek and the two of them taking a position in a civil custody case—is exercising direct control over the Child.

The factual allegations instead appear to be that the USAF may be exercising some control over Mother's actions (by deploying her to various places, for example) and that Mother is determining the Child's location by keeping the Child with her. Even if the

47

Court were to accept an imperfect analogy between that situation and the usual criminal cases, the indirect result (or collateral consequence) of the USAF's alleged actions would not be enough to consider the Child "in custody." *See Corridore*, 71 F.4th at 496 (citing *Hautzenroeder*, 887 F.3d at 740 (quoting *Maleng*, 490 U.S. at 92)) ("the collateral consequences of [a] conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.").

At most, the Application alleges that the USAF is supporting Mother in maintaining parental custody of the Child. (*See, e.g.*, App., ¶ 11 ("the Ohio, Greene County Juvenile Court, has issued numerous summons to the [USAF] for [Mother] to appear at previously scheduled hearings, however Ms. Angel has failed to appear at both hearings which further demonstrates Ms. Angel has the full support of the [USAF].")). But support of Mother is not the same as direct control of the Child.

This raises the reasonable question of whether Mother can be considered "the government" in this context. She is, according to the briefing, a captain in the USAF. (ECF No. 23, PageID 301). But the Child is not with Mother because of a military order from Mother to Child. And Mother does not have custody of the Child because Mother is an Air Force officer, but because she is the Child's mother and a state court has allegedly found that situation to be preferable. In other words, it is *the state court's* determination that has maintained Mother's custody of the Child, not an order of the Air Force or from Mother as an officer of the Air Force. *Lehman* says that the state court's determination cannot be challenged in habeas corpus.

Defendants cite several cases applying *Lehman* to various scenarios involving parental custody. (*See* Bursek Motion to Dismiss, ECF No. 15, PageID 236-237; Fed. Def. Motion to Dismiss, ECF No. 23, PageID 305-306). These cases uniformly conclude that habeas corpus is not available, as does virtually every case the undersigned has reviewed on the issue. Summarized below, these cases largely dismiss based on *Lehman* but at times also rely on the so-called "domestic relations exception" to federal court jurisdiction, and/or the *Younger* abstention doctrine. (These are mentioned again in Section V.B.3.)

<u>*Cases Applying* Lehman</u>

In *Hall v. The Beast*, 116 F. App'x 557 (6th Cir. 2004), parents alleged "that state authorities wrongfully removed their four minor children . . . based upon false charges of domestic violence and abuse." The district court dismissed their habeas petition and request for emergency relief for lack of subject matter jurisdiction. The Sixth Circuit affirmed based on *Lehman* and *Younger* abstention.

In *Jacobson v. Summit Cnty. Child. Servs. Bd.*, 202 F. App'x 88 (6th Cir. 2006), a mother whose parental rights were terminated in state court claimed "that her daughter was being unlawfully detained because she [the mother] was not given a fair hearing at the permanent custody trial." The district court dismissed her habeas corpus petition, and the Sixth Circuit affirmed based on *Lehman*.

In *Middleton v. Att'ys Gen. of States of N.Y., Pennsylvania*, 396 F.3d 207 (2d Cir. 2005), the court would not allow an appeal from the dismissal of a habeas corpus petition filed by a father seeking the return of his children, saying:  "Reasonable jurists could not

debate whether the district court's dismissal of the petition was a correct resolution of the matter. It was." *Id*. at 209 (cleaned up and citations omitted).

Years before most of these cases, and before the Supreme Court's decision in *Lehman*, the Sixth Circuit acknowledged a consensus in the circuits about whether habeas corpus relief was available to consider child custody matters:

> A federal court is not the proper forum for child custody proceedings, especially where State remedies are available. Since the writ of habeas corpus involves principles of comity, it should be used only in cases involving severe restraints upon individual liberty. *Hensley* [411 U.S. at 351].
>
> These principles of comity and the availability of adequate State remedies lead this court to conclude, as we did in *Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978), that federal courts should not assert jurisdiction over the appellants' habeas corpus claim under the facts in this case. The majority of the United States Courts of Appeals which have considered the question of whether habeas corpus is available to parents who contest child custody disputes have found the extraordinary writ to be inappropriate. *See Doe v. Doe*, 660 F.2d 101, 103-05 (4th Cir. 1981), referring to decisions of six other circuits.

*Castorr v. Brundage*, 674 F.2d 531, 535 (6th Cir. 1982).

Closer to home and more recently, in *Bates v. Dewine*, No. 1:16-cv-975, 2016 U.S. Dist. LEXIS 183068 (S.D. Ohio Oct. 31, 2016), *report and recommendation adopted* (S.D. Ohio Jan. 30, 2017), parents sought "to challenge state court rulings regarding the termination of their parental rights and seek the release of a minor from the custody of the Highland County Job and Family Services."  This Court sua sponte dismissed the case on preliminary review under Rule 4 of the 2254 Rules, based on *Lehman* and the domestic relations exception. Similar rulings were made in three related cases based on the same factual scenario. *See C.M.B. v. State of Ohio,* No. 2:16-cv-757 (S.D. Ohio Aug. 3, 2016)

50

(dismissing based on *Lehman* and noting that because the child is only three years old, "it is apparent that he is not in custody"); *Parks v. State of Ohio*, No. 2:17-cv-54 (S.D. Ohio Feb. 17, 2017) (rejecting, based on *Lehman* and other authorities, an attempt to remove the child custody matter from state court, as this Court did not have jurisdiction); *Parks v. Ohio*, No. 2:17-cv-128, 2017 U.S. Dist. LEXIS 54640 (S.D. Ohio Apr. 10, 2017) (dismissing fourth habeas action—this time brought under § 2255—as frivolous), *certificate of appealability denied,* No. 17-3506 (6th Cir. Dec. 13, 2017).

In *Peeples v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, No. 1:05-cv-2482, 2005 WL 2805755 (N.D. Ohio Oct. 26, 2005), a mother filed a habeas corpus petition alleging that "her children are in the custody of the state based on proceedings which violated her constitutional rights." The district court found that she "clearly challenges the two civil juvenile court custody proceedings" and dismissed the petition based on *Lehman*.

In *Cunningham by Cunningham v. Quinn*, No. 2:20-cv-129, 2020 WL 4670560 (W.D. Mich. Aug. 12, 2020), the district court concluded that a child in custody of relatives seeking to adopt him was not in custody under habeas corpus statutes. The court dismissed father's next friend habeas petition on his child's behalf for lack of jurisdiction based on *Lehman*, which it found "conclusively resolved the issue."

In *Head v. Florida*, No. 2:21-cv-10568, 2021 WL 1967629 (E.D. Mich. Apr. 5, 2021), a mother alleged that a state court "improperly placed her 11-month-old son in foster care based on 'information presented in a knowingly fraudulent UCCJEA (Uniform Child Custody Jurisdiction and Enforcement Act) petition by a government

employee." The district court summarily dismissed the habeas petition under Rule 4 based on *Lehman*, saying that even if the petition was construed as being brought on the child's behalf, the court lacked jurisdiction.

In *Harless v. Dep't of Child Protective Servs., Tarrent Cnty., TX*, No. CIV.A.3:99-cv-74-S, 1999 WL 33756653 (W.D. Ky. Feb. 10, 1999), parents filed a petition for writ of habeas corpus "commanding that the children be brought immediat[e]ly before this court." *Id*. at *2. The district court found that "plaintiffs' attempt to invoke federal habeas corpus jurisdiction is misplaced," citing *Lehman*.

Cases from other circuits are in accord. *See, e.g., Middleton,* 396 F.3d at 209 (2d Cir. 2005) (noting that "the federal courts do not have jurisdiction to review by means of a habeas application a state courts child-custody determination"); *Amerson v. State of Iowa, Iowa Dep't of Human Services,* 59 F.3d 92, 94-95 (8th Cir. 1995) ("The state's physical custody of [the child] has not restrained his liberty to a significantly greater extent than a parent's or foster parent's custody. The state has neither incarcerated [the child] nor imposed penal restrictions upon him. Such custody does not present the type of confinement for which habeas jurisdiction traditionally exists."); *Anderson v. State of Colo.*, 793 F.2d 262, 263 (10th Cir. 1986) (a father's habeas corpus petition seeking that his son be returned to his custody and declaratory and injunctive relief was "foreclosed by" *Lehman*:  "We think the holding in *Lehman* applies here, and thus Mr. Anderson may not use federal habeas corpus as a vehicle to undo the custody decision of the Colorado court.").

The Child and Father submit that *Lehman* and cases based on it are inapplicable, factually distinguishable, or erroneously interpreted. (*See* Resp. to Bursek Motion, ECF No. 22, PageID 284-285; Resp. to Fed. Def. Motion, ECF No. 25, PageID 323-324). The Second Circuit rejected a similar argument in *Middleton*:

> Middleton argues here that his case must be distinguished from *Lehman* on the ground that Middleton's parental rights have not been terminated. The rationale of *Lehman* does not, however, turn on such a distinction, focusing narrowly on the nature of the "custody" at issue instead. *Lehman* is therefore controlling law and forecloses Middleton's habeas application."

*Middleton*, 396 F.3d at 209. The undersigned agrees with this analysis and concludes similarly here. *Lehman's* discussion of "in custody" is relevant and controlling in this case, even if Father's parental rights were not terminated by the Arapahoe County Court or the Greene County Court.

The conclusion that *Lehman* applies here is bolstered by the fact that the Child and Father do not cite, and the undersigned has not found, any binding or persuasive caselaw that would support a finding that the Child *is* "in custody" as that term is used in Section 2241. The undersigned has located just one case pointing the opposite direction from the caselaw cited above. In *Nguyen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975), the Ninth Circuit concluded that a district court *did* have jurisdiction under Section 2241 in a particularly unusual child custody case. It said:

> We think it fair to conclude that this is a unique lawsuit, responsive to a highly unusual operation—the Vietnamese Orphan 'Babylift.' During the waning hours of our involvement in Vietnam, as the fall of Saigon grew imminent, various agencies of the United States Government, in concert with private American adoption agencies, participated in an airlift to evacuate children from Vietnam. The airlift was apparently intended to remove only those children who were already in some stage of the requisite

procedure for admission to the United States and adoption by American families—i.e., who were adoptable under Vietnamese law, legally in the custody of the American private agencies, and who satisfied the criteria for admission into the United States under the definition of an orphan 'child,' 8 U.S.C. s 1101(b)(1)(F), classifiable as an 'immediate relative' under 8 U.S.C. s 1151(b).

However, it now appears that some of the 2700 children airlifted were brought here improperly. We are presently dealing with a very limited record. The documentation accompanying some of the children is insufficient on its face to establish the child's status as an orphan, abandoned, or irrevocably released child, the validity of the private agency's custody of such a child under Vietnamese child custody law, or the child's eligibility for admission under 8 U.S.C. §§ 1101(b)(1)(F) and 1151(b). While inadequate documentation is in many cases the product of the last minute haste of the evacuation, in at least some cases, as the district court found, it is because the children are not orphans and have not been validly released into the custody of the adoption agencies. From plaintiffs' assertions, it appears that some of the children have a living parent, and were merely left in orphanages for safekeeping (Vietnamese orphanages allegedly serve some of the functions of day care centers). The parent(s) may or may not know the child is alive, or where it is. Other children were allegedly released with the understanding that the parents would be reunited with the child here; still others were released by hysterical parents terrorized by the fear that the child would be murdered by the approaching forces. In the latter situations plaintiffs question the validity of the releases.

To put the matter in broad outline, the ultimate objective the plaintiffs seek is the reunion of children with their parents. In order to attain that objective, plaintiffs seek the accumulation and investigation of the children's records in order to identify and locate children who may have living parents (the children are now spread all over the country in foster and adoptive homes), and the establishment of procedures for locating the natural parents and repatriating and reuniting the children with them. Plaintiffs seek to accomplish those objectives expeditiously, in one lawsuit in a single forum, before the passage of time erases the children's memories (making more difficult the location of living relatives), and makes even more bitter the disruption in the child's and adoptive parents' lives should the child eventually be reunited with its natural parents.

*Id*. at 1196-97. The court noted that "the [Immigration and Naturalization Service] had

facilitated the children's removal from Vietnam through the exercise of the discretionary

parole power. 8 U.S.C. § 1182(d)(5), which enables the Attorney General or his delegate to parole an alien into the United States if in the public interest, without regard to the alien's immigrant status or other entitlement to admission." *Id*. at 1198. The district court had proceeded to set a timetable for an investigation and allowed limited discovery, apparently without any discussion of jurisdiction. *Id*. at 1198, 1200.

On appeal, after reviewing and rejecting other possible sources of jurisdiction, the Ninth Circuit

> concluded that the district court did have jurisdiction to enter its order under its habeas corpus power, 28 U.S.C. § 2241. This suit is essentially a challenge to the legality of the children's present custody. The traditional function of the Great Writ has been to 'afford a swift and imperative remedy in all cases of illegal restraint or confinement;' we see no reason here why the complaint may not be treated as a joint or class application for a writ of habeas corpus (on behalf of those ultimately determined to be illegally detained), and the legality of the children's custody tested in habeas proceedings.

> The 'in custody' jurisdictional prerequisite to § 2241 habeas jurisdiction is met. As the Court has recognized, custodial restraints on a minor child, even if voluntarily submitted to by the child, have long been held a sufficient deprivation of the child's liberty to be tested by way of habeas corpus. *Jones v. Cunningham*, 371 U.S. 236, 238-240, 240 n.12, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). *See* Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1073 n.6 (1970); *Ex Parte Swall*, 36 Nev. 171, 134 P. 96, 97 (1913); *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *In the Matter of Barry* (reported as a note to *In re Burrus*), 136 U.S. 597, 602-603, 34 L.Ed. 503 (1844). The child is presumptively detained if the custody is illegal, *see Ex Parte Swall, supra; In re Barry, supra*, at 603, 34 L.Ed. 503—we see no reason why the child itself may not question the detention. Indeed, habeas has been used in state courts to determine the custody of minor children in circumstances similar to those presented here. *Compare People ex rel. Choolokian v. Mission of Immaculate Virgin, et al.*, and *Same v. New York Foundling Hospital, et al.*, 192 Misc. 454, 76 N.Y.S.2d 509 (Sup.Ct.1947), with *In the Matter of George Kozmin, Paul Kozmin, Richard Kozmin, and Peter Kozmin*, Nos. 220638, 220639, 220640, 237888, State of Illinois, County of Cook, in the

55

Family Court of Cook County, Decretal Order, August 19, 1959. (Both opinions quoted at 8 Whiteman, *supra* n.13, at 639-640.)

Detention need not be by governmental authorities to confer § 2241 jurisdiction. The Great Writ, habeas corpus ad subjiciendum, was even in Blackstone's time a remedy 'in all manner of illegal confinement,' including false imprisonments by private persons. 3 W. Blackstone, Commentaries 127-132. The Federal habeas statute predicates the exercise of Federal habeas jurisdiction not on the character of the custodian, but on that of the custody: 'in violation of the Constitution or laws … of the United States.' <u>While most private detentions (and child custody conflicts) do not rise to the level of constitutional violations, the governmental involvement in facilitating and maintaining the allegedly illegal physical and legal custody exercised respectively by the foster parents and adoption agencies does present that possibility here, and habeas jurisdiction is proper.</u>

*Nguyen*, 528 F.2d at 1202-03 (emphasis added and footnotes omitted).

*Nguyen* does not persuade the undersigned that the Child is "in custody" here. It involved a singularly unique situation. More importantly, the case appears to stand alone in including child custody issues as potentially within the scope of Section 2241. Its purported reliance on a footnote in *Jones v. Cunningham* is likewise unpersuasive, as that footnote cited only *state* habeas corpus cases, not federal habeas corpus cases. *See* 371 U.S. at 240 n.12. The footnoted text in *Jones* itself says: "in the state courts, as in England, habeas corpus has been widely used by parents disputing over which is the fit and proper person to have custody of their child[.]" But the fact that an action was permitted in state courts before 1950 (as the cited state court cases say) does not mean that it may be done in federal court today. Today's federal habeas corpus cases are governed by the standards set out in the AEDPA (as enacted in 1990s) and the decisions of the Supreme Court. *See Shoop v. Twyford*, 596 U.S. 811, 821 (2022) ("AEDPA provides the governing rules for federal habeas proceedings").

Further, the Ninth Circuit's *Nguyen* case predated the Supreme Court's *Lehman* case by several years and to the extent it is contrary to *Lehman*, appears to have been implicitly overruled by *Lehman. Nguyen* also appears to no longer be persuasive within the Ninth Circuit itself. In 2019, a California district court considered a habeas corpus action "attempting to challenge the 2016 juvenile dependency court order issued in the State Case (and underlying proceedings), raising additional allegations of wrongdoing and framing the Petition as asserting a due process challenge to the sufficiency of the state court proceedings." *Spell v. Stone*, No. 19-cv-5886, 2019 WL 3766558, at *1 (C.D. Cal. Aug. 8, 2019). The district court dismissed the petition. Among other things, the court rejected the petitioner's reliance on *Nguyen*, turning instead on *Lehman*:

> Importantly, the Supreme Court has never acknowledged that habeas corpus is an appropriate remedy for litigating federal constitutional claims arising from state child custody disputes, and reaffirmed the same in *Lehman* which squarely forecloses petitioner's claim in habeas that she was deprived of a liberty interest when her children assertedly were unlawfully removed and detained without due process.

*Spell*, 2019 WL 3766558, at *3.

### *Father's Stacked Allegations*

As noted above, Father resists the application of *Lehman* by asserting (among other things) that he is not challenging any order of the Arapahoe County Court. (*See, e.g.*, App., ¶ 30 ("Mr. Bryant state he seeks the unconditional release of J.O.B. from unlawful restraint and he is not challenging any state court judgement . . ."); Resp. to Bursek Motion to Dismiss, ECF No. 22, PageID 284 ("The Plaintiff states he is not . . . collaterally attacking a state court final judgment . . .")). His argument is based—at least

in part—on his assertion that there *is* no final state court judgment to attack. For example,

in his Response to the Federal Defendants' Motion to Dismiss, Father says:

> 1. The Defendants' contends that [Father] has already litigated custody of [the Child] with [Mother] and lost. However, we dispute this claim and maintain that no valid determination on custody has been rendered in any court of competent jurisdiction.
>
> 2. The Defendant's assertion that [Father] is seeking to review a specific state court judgment is misleading and unsupported by the record. Nowhere in the Plaintiff's petition does it make such a request. Instead, Plaintiffs petition seeks to address the ongoing violation of constitutional rights and the release of [the Child] from what we believe to be unlawful restraint.

(ECF No. 25, PageID 323).

Father's conclusion that there has been no "valid" determination on custody is

based on his further allegation that the state court lacked jurisdiction because he was not

properly served in the state child custody case, and his allegation that he was entitled to a

hearing. (*See, e.g.*, App., ¶¶ 31-40 (service); App., ¶¶ 10, 49-50 (hearing)). These alleged

problems appear to be the two roots of his legal argument.

For example, Father says in the Application that "the facts demonstrated in the

record, clearly detail how the [Arapahoe County] court lacked sufficient legal basis to

proceed in the case and unlawfully proceeded in the case wholly without jurisdiction

based upon deficient service." (App., ¶ 32). And, he asserts that "the state court, Mr.

Bursek, and USAF, collectively, unlawfully restrained J.O.B, without a declaration of

Mr. Bryants' parental "unfitness," and without providing Mr. Bryant with an

'opportunity' to challenge the USAF claim of national security[.]" (App., ¶ 67).

Because there was no proper service and no hearing, Father's argument appears to go, the Colorado court never made a valid determination that Mother should maintain custody of the Child, and therefore Father is not technically challenging a child custody judgment, because there isn't one—and this habeas case is therefore not a proceeding challenging a state court decision under Section 2254 such that *Lehman* would apply.

Father's stacked allegations collapse under close examination. This Court cannot determine that no valid determination about custody of the Child exists. To do so, the Court would necessarily have to examine the state court proceedings and the orders of that court, and make a judgment about whether the proceedings were fair, correctly-decided, and comported with state service requirements and due process. This Court cannot do that, because *Lehman* says that federal courts do not have jurisdiction to make those kinds of decisions about state child custody cases. And, although Father says that he is not challenging the state court's orders, he is necessarily asking this Court to consider the state court proceedings and orders and to agree with him that the proceedings violated the constitution[16]—that is how he would establish the factual premise underlying the rest of his arguments. *Lehman* prohibits that.

---

[16] This Court could conclude that the Application is, in fact, brought under Section 2254 despite its label. *See Young Bok Song v. Gipson*, 423 F. App'x 506, 509 (6th Cir. 2011) (a "district court may on its own initiative re-characterize a pro se pleading provided it gives notice to the litigant of potential adverse collateral consequences").

The undersigned does not recommend this approach in order to respect the Child and Father's deliberate choice of vehicles, *see United States v. Kirkpatrick*, No. 1:96-cr-81, 2009 WL 2823658, at *8 (E.D. Tenn. Aug. 28, 2009), and because doing so would involve other procedural issues that would delay resolution of this case and would further muddy the already murky waters. *See Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004) (district court should have given certain notices before it recharacterized a § 2241 petition as a § 2254 petition).

This Court cannot simply accept the stack of allegations as true, either. With respect to the factual findings of state courts, a "presumption of correctness" would apply, which a petitioner must overcome. *See* 28 U.S.C. § 2254(e)(1); *see also, generally, Cone v. Michigan*, No. 2:20-cv-10207, 2021 WL 4552252, at *2 (E.D. Mich. Oct. 5, 2021) (concluding that the petitioner had not rebutted "the presumption of correctness afforded state court factual findings" by disagreeing with a state court's factual determination that there was no detainer issued against him—meaning that he was not "in custody"). To overcome that presumption, Father would have to convince this Court, by clear and convincing evidence, that the state court got things wrong. Any attempt to do so would necessarily require the Court to engage in a review the state court decisions and would take this proceeding down the path that *Lehman* barred. *See Mohammed v. Lofreso*, No. 2:11-cv-469, 2011 WL 2711017, at *3 (S.D. Ohio July 12, 2011), *report and recommendation adopted*, 2011 WL 3568482 (S.D. Ohio Aug. 15, 2011) ("As the Supreme Court made clear in *Lehman*, the federal writ of habeas corpus is not intended for use in resolving 'custody' disputes between private parties.").[17]

In sum, without any binding or persuasive authority to support the Child and Father's arguments, and in light of the overwhelming authority to the contrary, the undersigned is not convinced that the "in custody" requirement of Section 2241 (or Section 2254) is satisfied here.

---

[17] This Court noted in *Mohammed* that the petitioner "would fare no better if the Court were to consider his claim under 28 U.S.C. § 2255—authorizing federal court collateral review of federal court decisions—for essentially the same reasons" discussed in *Lehman*. 2011 WL 2711017, at *3.

*Custody is Jurisdictional*

The "in custody" requirement is a jurisdictional prerequisite for a district court to consider a habeas corpus petition. *Hautzenroeder v. DeWine*, 887 F.3d 737, 740 (6th Cir. 2018) (citing *Steverson v. Summers*, 258 F.3d 520, 522 (6th Cir. 2001)) ("This language is jurisdictional: if a petitioner is not 'in custody' when she files her petition, courts may not consider it.").

The person bringing a case to federal court has the burden to show that the district court has jurisdiction. *Neick v. City of Beavercreek*, 255 F. Supp. 2d 773, 775 (S.D. Ohio 2003) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)). A habeas petitioner is no different; he or she must convince the court that the "in custody" requirement is met. *Corridore v. Washington*, 71 F.4th 491, 494 (6th Cir. 2023) (citing *Hautzenroeder*, 887 F.3d at 740) (the petitioner "bears the burden of proving that he is in custody").

## ***Conclusion on this Issue***

The Child and Father have not satisfied their burden for the reasons discussed above. Accordingly, the undersigned **RECOMMENDS** the Court **FIND** that the Child is not "in custody" as that term is used in the habeas corpus statutes and **DISMISS** all remaining habeas corpus claim(s) for lack of jurisdiction. The Court should **GRANT** Defendants' motions to dismiss to the extent they made this argument (*see* Bursek Motion to Dismiss, ECF No. 15, PageID 236-237; Fed. Def. Motion to Dismiss, ECF No. 23, PageID 305-306) but otherwise **DENY** them as **MOOT**. **This means that the remainder of the case (not dismissed for other reasons) should be DISMISSED.**

61

### 2. Other statutes

Although the Child and Father have emphasized that this case is a habeas corpus case, the undersigned will address the remaining statutes mentioned in the Application in the interest of completeness.

#### *Federal Question Jurisdiction – 28 U.S.C. § 1331*

The Application invokes this court's federal question jurisdiction. (App., ¶ 21). Federal district courts do indeed have original jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The 'arising under' gateway into federal court . . . has two distinct paths: 1) 'litigants whose causes of action are created by federal law,' and 2) 'state-law claims that implicate significant federal issues.'" *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012 (6th Cir. 2018) (quoting *Hampton v. R.J. Corman R.R. Switching Co*., 683 F.3d 708, 711 (6th Cir. 2012)). The first path of "[f]ederal question jurisdiction under 28 U.S.C. § 1331 is the 'well-worn thoroughfare [that] admits litigants whose causes of action are created by federal law, that is, where federal law provides a right to relief.'" *Luckey Farmers, Inc. v. Fergus Farms, LLC*, No. 23-cv-1207, 2024 WL 639793, at *2 (N.D. Ohio Feb. 15, 2024) (quoting *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)).

Where a child custody matter was pursued in habeas corpus and rejected, the Sixth Circuit summarily rejected an alternative argument about federal question jurisdiction. In *Hall v. The Beast*, parents claimed that their children were wrongfully removed based on false abuse charges. The Sixth Circuit dealt with their alternative argument in two sentences:

> Plaintiffs also claim that this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. However, plaintiffs brought this case as a habeas action, and since federal habeas is not available in this case, plaintiffs have failed to raise a federal question in this action.

116 F. App'x 557, 559 (6th Cir. 2004). The Court should similarly conclude here.

Father appears to distinguish this case from the usual child-custody-via-habeas case. He asserts that the Child "is being unlawfully restrained by the USAF under the National Security Act, title 50 Chapter 15." (App., ¶ 3). He says that "the legality of substantially and unusually restraining a non-military parents' child based upon a USAF officers' claim of 'national security,' governed by U.S.C. Title 50, is a novel question (28 U.S.C. § 1331), that requires the vehicle of habeas with its unique features." (App., ¶ 58). Setting aside the habeas aspect for a moment, and noting that "novelty" is not a basis for jurisdiction under Section 1331, this argument requires some additional discussion.

Father may seek take the alternative, narrow path to "arising under" jurisdiction by including allegations about the USAF and "national security" concerns. As noted above, "state-law claims that implicate significant federal issues" may also "arise under" federal law in a few circumstances. *See Cornell*, 908 F.3d at 1012. The Supreme Court has called this a "special and small category." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Courts evaluating such claims "ask whether (1) a state-law claim necessarily raises a stated federal issue, (2) that is actually disputed and substantial, (3) which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Cornell*, 908 F.3d at 1014 (cleaned up).

That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we [have] held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn v. Minton*, 568 U.S. 251, 257-58 (2013) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-315 (2005)). "This pathway is a slim category that is to be read narrowly." *Id.* (cleaned up).

In this case, Father alleges that Attorney Bursek's arguments to the Arapahoe County Court during an April 2022 hearing in the custody case invoked "national security concerns." (App., ¶¶ 41, 47). Bursek's arguments were apparently successful in some respect. (App., ¶ 50 ("the state court unfairly acquiesced to the military 'national security' claim when the state court deprived [Father] of his constitutional rights to notice and to be heard on the military national security claim. . . .")). Father complains that he was not given "adequate notice or an opportunity to defend against [this] national security claim." (App., ¶ 10). Father does not, however, explain how the National Security Act—or some part of it—influenced or was applied to keep the Child in unconstitutional custody.

Father's argument appears to originate with one or two statements made during the April 2022 hearing. First:

**THE COURT:** Hold on. Mr. Bursek, if you can tell me, which we have to realize that we -- we – we're dealing with -- with the military, and the, you know, some -- some higher -- higher authorities here under the Servicemembers Civil Relief Act, A, Can you tell me where your client is

64

and -- and why, or why not? And, B, Is there anything that we can do to allow some contact between [Father] and the child?

**MR. BURSEK:** And -- and, Your Honor, I -- and I filed this, I think in my motion regarding, to stay the case. <u>I am not at liberty to disclose her address due to national security concerns</u>. And that's why the military has blocked off her address as well, too.

. . .

**THE COURT:** Okay.

**MR. BURSEK:** With respect to having -- to your second question, getting contact…

(ECF No. 5-18, PageID 197; App., ¶ 47). And second:

**THE COURT:** . . . I think that there [are] some legitimate concerns of, if Mom is out of the country and she has applied for a passport for the child, where is the child? Where is this child? I -- I don't have an answer to that. Mr. Bursek?

**MR. BURSEK:** I have an answer for the Court.

**THE COURT:** Yeah. Where is the -- where is the baby?

**MR. BURSEK:** The child's with Mom.

**THE COURT:** Okay. And is the child out of the country with Mom?

**MR. BURSEK:** I -- I can't. And I apologize, Judge. I -- I am bound by attorney-client privilege. And so I – I have limited authority, but the child is with Mom. The child is safe, and that's what I would say about that. That - that's what I'm authorized to say.

**THE COURT:** All right. . . .

(ECF No. 5-19, PageID 198-199; App. ¶ 42).

The undersigned notes for clarity that Father does not invoke or challenge any

provision of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq*.

The Application instead specifically refers to "the National Security Act, title 50 Chapter 15," under which the Child is allegedly restrained. (App., ¶ 3; *see also* ¶ 58).

Title 50 of the United States Code is entitled "War and National Defense." Chapter 15 of Title 50 was entitled "National Security." Chapter 15 no longer has any content; its sections were editorially reclassified into Chapters 44 through 47 about ten years ago.[18] Currently, Chapter 44 is "cited as the 'National Security Act of 1947.'" 50 U.S.C. § 3001. It has nine subchapters and many sections and covers a wide range of topics. *See* 50 U.S.C. §§ 3001-3244.[19] Chapters 45, 46, and 47 have many subparts as well. *See* 50 U.S.C. §§ 3301-3620.

---

[18] The website of the Office of the Law Revision Counsel, U.S. House of Representatives, describes the editorial reclassification as addressing a "problem area" of national security law,

> which was classified primarily to chapter 15 of title 50, United States Code (50 U.S.C. 401 et seq.). Chapter 15 was originally created from the National Security Act of 1947. Over the years, however, chapter 15 evolved to incorporate additional statutes related to national security. As a result of the extensive growth in this area of law, chapter 15 became overly cluttered, and its structure became opaque. To reduce the overcrowding and to reflect more clearly the underlying structure of the individual statutes, the material in chapter 15 was reorganized into four new chapters.
>
> > \* Chapter 44, National Security (50 U.S.C. 3001 et seq.) consists primarily of the National Security Act of 1947.
> > \* Chapter 45, Miscellaneous Intelligence Community Authorities (50 U.S.C. 3301 et seq.) consists of related provisions from 16 different statutes.
> > \* Chapter 46, Central Intelligence Agency (50 U.S.C. 3501 et seq.) consists primarily of the Central Intelligence Agency Act of 1949.
> > \* Chapter 47, National Security Agency (50 U.S.C. 3601 et seq.) consists of the National Security Agency Act of 1959.

Available at https://uscode.house.gov/editorialreclassification/t50/index.html (last visited Aug. 27, 2024).

[19] The subchapters are titled as follows:

> Subchapter I—Coordination for National Security
> Subchapter II—Miscellaneous Provisions

Father does not identify any particular part of Chapters 44, 45, 46, or 47 that was invoked or applied with respect to the Child. He does not reference it in any identifiable way except to cite the now-obsolete Chapter 15. Looking at his evidence, it is not clear that Attorney Bursek's mention of "national security concerns" was, in fact, a reference to the National Security Act of 1947 or any provision of these statutes. Even assuming that it was (for the purpose of this argument only) the undersigned is unconvinced that this case presents a claim arising under federal law.

First, Father's argument conflates issues. His evidence suggests that the Child and Mother's *address* was withheld from Father and the Arapahoe County Court on national security grounds. The evidence does not suggest that *custody* of the Child was withheld from Father on that basis.[20] Relatedly, although Father alleges that *Attorney Bursek* invoked "national security concerns," the undersigned detects only rhetoric linking the *trial court* to any custody decision based on national security. For example, Father asserts that:

> the facts in the record demonstrate that members of the USAF, along with former service member Mr. Bursek, acted collectively, on April 13th, 2022, during set hearing, when Mr. Bursek refused to disclose J.O.B.

---

Subchapter III—Accountability for Intelligence Activities
Subchapter IV—Protection of Certain National Security Information
Subchapter V—Protection of Operational Files
Subchapter VI—Access to Classified Information
Subchapter VII—Application of Sanctions Laws to Intelligence Activities
Subchapter VIII—Education in Support of National Intelligence
Subchapter IX—Additional Miscellaneous Provisions

[20] This argument also directs the Court' focus to Father's rights, rather than the Child's. Although the issue of Mother's address may have negatively impacted Father, his rights are not the issue here. *See* Section V.A.2. To the extent Father seeks to make his own rights the issue, he is doing exactly what is prohibited by *Lehman*—"seek[ing] to relitigate, through federal habeas, not any liberty interest of [the Child], but the interest in [his]own parental rights." *Lehman*, 458 U.S. at 511.

whereabouts to the Judge, and successfully invoked claim of national security, which ultimately, deprived the state court of jurisdiction, and effectively restrained J.O.B. without affording Mr. Bryant adequate notice or an opportunity to defend against national security claim.

(App., ¶ 10). And:

the state court demonstrated an invidious animus religion against [Father], and in conspiratorial fashion, collectively acted with the USAF, by and thru Mr. Bursek, by continuing its fraud upon the court at April 13th, 2022, wherein [Mother] failed to appear, which ultimately, deprived [Father and the Child] of substantive due process, unlawfully restrained [the Child] under "national security" claim, and effectively resulted in 15-month substantive forced separation between [Father and the Child].

(App., ¶ 41).

Documents filed in Father's federal case in Colorado provide a clearer picture of the state court's custody decisions. Notably, these decisions do not reference "national security" or rely on Title 15 or any other provision of federal law when deciding who should have custody of the Child. For example, in a January 26, 2023 opinion, the Colorado Court of Appeals considered orders entered before and after the April 2022 hearing:

The June 2021 relocation and parenting time orders were based on the parties' and J.O.B.'s circumstances existing in June 2021, including mother's intention to deploy to Japan on or around July 30, 2021. For reasons not relevant here, mother did not go to Japan but was, instead, sent to Ohio in November 2021. Based on that changed circumstance, mother moved to modify parenting time. After a contested hearing, the district court entered new parenting time orders based on the parties' and J.O.B.'s circumstances as of June 2022, finding that it was in J.O.B.'s best interests to give father limited, supervised parenting time with J.O.B. . . .

We . . . consider, and reject, father's contentions that the magistrate abused her discretion by giving mother sole decision-making responsibility. . . .

When evaluating the child's best interests for parenting time under [a Colorado statute], however, the magistrate expressed concern for father's

68

ability to make appropriate decisions for J.O.B. The magistrate found, supported by record evidence, that father made unfounded allegations about mother's mental health and alcohol abuse and made false reports that J.O.B. had been sexually abused. The magistrate found that "[f]or father to make such serious allegations and subject [J.O.B.] to unnecessary medical exams, calls into question [his] ability to make appropriate decisions on behalf of [J.O.B.] and whether he is capable of placing her needs above those of his own." These findings, though limited, are adequate to determine why the court gave mother sole decision-making responsibility.

(ECF No. 59-1, Pages 8-10 of 78 in *Bryant v. McLean*, Case No. 1:23-cv-997 in the District of Colorado, which is a copy of an Opinion from *In re Parental Responsibilities Concerning J.O.B.,* Colo. App. No. 21CA1128, ¶¶ 15, 17, 19 (January 26, 2023)).

In a companion appeal, the Colorado Court of Appeals noted that a "restriction of father's parenting time arose because father did not follow court orders, as demonstrated by the court's having to issue the abduction prevention orders" for *Father* to return the Child to *Mother*. (*See* ECF No. 59-1, Page 27 of 78 in *Bryant v. McLean*, Case No. 1:23-cv-997 in the District of Colorado, which is a copy of an Opinion from *In re Parental Responsibilities Concerning J.O.B.*, Colo. App. No. 21CA1724, ¶ 15 (January 26, 2023)). As noted above, this Court may take judicial notice of these online records. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)) ("Federal courts may take judicial notice of proceedings in other courts of record.").

The Colorado custody decisions do not turn on "national security concerns." They do not mention national security or refer to or analyze any particular provision of federal law. The Application itself does not identify any existing section of federal statute. Accordingly, there is no basis to conclude that a federal "national security" issue was

necessarily raised, actually disputed, and substantial in the state custody decisions.

Further, given that there is no indication that any section of federal law played a role in

the Child's custody, the undersigned has no basis on which to conclude that this Court

may now entertain an undefined "national security" issue "without disturbing any

congressionally approved balance of federal and state judicial responsibilities." *Est. of*

*Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018). From all

the matters reviewed, it appears that custody of the Child was considered and resolved on

state law grounds. The undersigned accordingly concludes that this habeas

corpus/custody matter does not arise under federal law, *see* 28 U.S.C. § 1331—outside of

the habeas corpus context—because of alleged "national security concerns." *See Hall v.*

*The Beast*, 116 F. App'x 557, 559 (6th Cir. 2004).

<u>*Declaratory Judgment Act – 28 U.S.C. § 2201*</u>

The Application also seeks relief under this statute. (App., PageID 116; ¶¶ 21, 72;

Prayer for Relief, PageID 139). The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought. Any such
> declaration shall have the force and effect of a final judgment or decree and
> shall be reviewable as such.

28 U.S.C. § 2201(a). Section 2202, also cited in the Application (*see* App., PageID 116,

121 at ¶ 21), provides that: "Further necessary or proper relief based on a declaratory

judgment or decree may be granted, after reasonable notice and hearing, against any

adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

"It is well established that the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal jurisdiction." *Louisville & Nashville R. Co. v. Donovan*, 713 F.2d 1243, 1245 (6th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671-72 (1950) and other cases). "Before invoking the Declaratory Judgment Act, a federal court must 'have jurisdiction already' under some other federal statute." *Anglin v. Kentucky's Governmental Branchs/Artificial Citizens*, No. 3:11-cv-P406-M, 2011 WL 5979208, at *1 (W.D. Ky. Nov. 29, 2011) (quoting *Heydon v. MediaOne of S.E. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)); *see also Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (same). Thus, the Declaratory Judgment Act can apply only if this Court already has jurisdiction from another source.

### *All Writs Act – 28 U.S.C. § 1651*

The Application asserts that this Court has jurisdiction to grant relief under this statute. (*See* App., PageID 116, 121, 138). The All Writs Act states that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Here the Application alleges:

> The Court should exercise this [equitable, common law habeas] authority to grant Petitioners' habeas corpus petition and to fashion any and all additional relief, including interim and declaratory relief, necessary to effectuate Petitioners' expeditious release from unlawful restraint and reunification pursuant to 28 U.S.C. § 1651 (All Writs Act).

(App., ¶ 72 (concerning "Claim #2")). However, as discussed above, this Court does not have common law habeas corpus authority, and all habeas corpus claims should be dismissed. *See* Sections V.A.1, V.B.1.

The All Writs Act also does not give this Court jurisdiction to hear the case in the absence of other jurisdiction, as it is not an independent source of jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("the All Writs Act does not confer jurisdiction on the federal courts"). The Act also cannot be used to issue a writ of habeas corpus where one is not appropriate under the habeas corpus statutes:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). *See also Shoop v. Twyford*, 596 U.S. 811, 820-21 (2022) (citing *id.*) ("a petitioner cannot use that Act to circumvent statutory requirements or otherwise binding procedural rules"); *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999) (collecting authorities and noting that the All Writs Act "does not enlarge" a court's existing statutory jurisdiction). Like the Declaratory Judgment Act, the All Writs Act can only operate where the court already has jurisdiction from another source. Here, for the reasons discussed above, this Court does not otherwise have jurisdiction.

## Conclusion on this Issue

In sum, the undersigned concludes that the Court does not otherwise have jurisdiction under 28 U.S.C. § 1331 (concerning federal question jurisdiction); 28 U.S.C. § 2201 (the Declaratory Judgment Act); or 28 U.S.C. § 1651 (the All Writs Act).

### 3.      Exceptions to Jurisdiction

The parties discuss some theories under which a district court would not or could not exercise jurisdiction that it otherwise has. These include the domestic relations exception,[21] the *Younger* abstention doctrine,[22] and the *Rooker-Feldman* doctrine.[23]

---

[21] The Supreme Court has said that "divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006) (cleaned up). *See also* Judicially Created Limitations on Diversity Jurisdiction—Domestic Relations Cases—General Principles, 13E Fed. Prac. & Proc. Juris. § 3609 (3d ed.) ("Although some courts have applied the domestic relations exception in federal question cases, others have held that the exception is limited to suits based on diversity of citizenship jurisdiction.") (footnotes omitted); *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 795, 797 (6th Cir. 2015) ("our cases have clarified that the domestic-relations exception deprives federal courts of diversity jurisdiction if the plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree. . . . if the plaintiff requests that a federal court determine who should have care for and control a child, then that request is outside the jurisdiction of the federal courts"); *Sefa v. Kentucky*, 510 F. App'x 435, 437-38 (6th Cir. 2013) ("to the extent the plaintiff seeks a declaration that the state's child-custody determination was unlawful, an injunction for the minor children's release, and monetary damages arising from the child-custody decision, these claims constitute collateral attacks on the state court judgments terminating his sisters' parental rights and were properly excluded from consideration by the district court.") (cleaned up). The "remedy that the plaintiff seeks" determines whether the exception applies. *Greenberg v. Slatery*, No. 22-5886, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023) (citing *Chevalier*, 803 F.3d at 797).

[22] Absent extraordinary circumstances, federal courts may not interfere with pending state proceedings in order to entertain constitutional challenges to the state proceedings. *Chapman v. Bishop*, No. 1:23-cv-745, 2023 WL 8269916, at *3 (S.D. Ohio Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 263508 (S.D. Ohio Jan. 24, 2024) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). Under the *Younger* abstention doctrine, a federal court must abstain where "[1] state proceedings are pending; [2] the state proceedings involve an important state interest; and [3] the state proceeding will afford the plaintiff an adequate opportunity to raise [his or her] constitutional claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989)).

[23] "United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional." *Peeples v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, No. 1:05-cv-2482, 2005 WL 2805755, at *2 (N.D. Ohio Oct. 26, 2005) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)).

It is conceptually unclear how the *Rooker-Feldman* doctrine could apply in a habeas corpus action, because habeas is itself an exception to the doctrine. *See In re Singleton*, 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999) (citing § 2241 and *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996)) ("an exception to the *Rooker/Feldman* doctrine arises when a federal statute authorizes federal review of final state court decisions. *See* 28 U.S.C. § 2241 (authorizing federal district courts to review state court decisions in habeas corpus proceedings)."); *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 407 (6th Cir.

Because the undersigned concludes that this Court does not have jurisdiction to consider this habeas corpus matter for other reasons, these exceptions to jurisdiction require no further discussion.

## VI.   <u>Evidentiary Hearing</u>

To the extent that a determination is needed under Rule 8(a) of the 2254 Rules or 2255 Rules, the undersigned concludes that an evidentiary hearing is not needed to resolve the determinative jurisdictional issues discussed herein.

## VII.   <u>Certificate of Appealability</u>

A certificate of appealability ("COA") is a post-review conclusion about whether an appeal should be allowed in a habeas corpus proceeding. It "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

### A.   <u>When Required</u>

Under Rule 11(a) of the 2254 Rules and under Rule 11(a) of the 2255 Rules, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

In the usual habeas corpus case under Section 2254, a petitioner who is denied relief may not appeal without a COA. A movant denied relief under Section 2255 likewise may not appeal without one.  These individuals must obtain a certificate of

---

2020) (Sutton, C.J., concurring) (discussing the roots of the *Rooker-Feldman* doctrine and noting that: "Just one federal statute to my knowledge empowers district courts to review final state court judgments, 28 U.S.C. § 2254(a), which allows federal habeas review of state prisoners' petitions for relief.").

appealability ("COA") to appeal from the district court or the court of appeals. The relevant statute provides:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > **(A)** the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1).

The statute does not mention applications brought under Section 2241. However, the Sixth Circuit has said that the COA requirement applies to *state* detainees who file under Section 2241. *Winburn v. Nagy*, 956 F.3d 909, 910 (6th Cir. 2020) ("State pretrial detainees proceeding under § 2241, we conclude, may not appeal without certificates of appealability."). *Federal* detainees filing under Section 2241, however, do not need to obtain a COA to appeal. *Id*. at 912 ("Congress chose to require certificates of appealability for state but not federal prisoners who invoke § 2241.").

As discussed above, the Application did not raise a claim under § 2254 and the undersigned has not recommended construing the claims as arising under § 2254. Section V.A.1.; Footnotes 12, 16. It could reasonably be argued, however, that "the detention complained of arises out of process issued by a State court." § 2253(c)(1)(A). To the extent the District Judge would construe the Application as bringing a § 2254 claim, or would otherwise conclude that the claim falls within § 2253(c)(1)(A), a COA would be necessary.

With respect to the § 2241 claim arguably alleging that the Child is in federal custody, it appears that no COA would be required. With respect to the § 2255 claim, a COA is required.

### A.  <u>Standard</u>

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Sixth Circuit has also cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

"When a district court denies a claim on procedural grounds, the court may issue a COA only if the applicant shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *1 (6th Cir. May 21, 2020) (quoting *Slack*, 529 U.S. at 484).

### B.  <u>Conclusion on this Issue</u>

With respect to the central issue discussed in this Report and Recommendation— whether the Child is "in custody" as that term is used in the habeas corpus statutes—**the undersigned <u>RECOMMENDS</u> that the Court <u>DENY</u> a COA**. Reasonable jurists

would not debate whether *Lehman* applies here. Caselaw overwhelmingly supports that conclusion, and the USAF's alleged support of Mother during the parents' child custody case does not change it. *See Cunningham by Cunningham v. Quinn*, No. 2:20-cv-129, 2020 WL 4670560 (W.D. Mich. Aug. 12, 2020) (denying a COA where a father filed as next friend for his child who was in the legal custody of relatives seeking to adopt him, and finding an appeal would be frivolous); *Stephens v. Smith*, No. 1:16-cv-P106, 2017 WL 1017592, at *4 (W.D. Ky. Mar. 15, 2017) (denying a COA where a father filed a § 2241 petition to seek access to his children); *Middleton v. Att'ys Gen. of States of N.Y., Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying a COA where a father sought the return of his children in a habeas corpus action, stating definitively that dismissal for lack of jurisdiction was correct).

Further, reasonable jurists **would not** find it debatable that:

- the Application does not raise claims under the APA or FTCA, but that if it did, the claims should be severed and dismissed without prejudice.

- this court has no common law habeas jurisdiction.

- only the Child has a potential habeas corpus claim as Father is not in custody. Father's rights are not at issue here.

- there is no separate habeas corpus action under § 2243.

- this Court does not have jurisdiction to consider the Child's § 2255 claim.

- the United States, Secretary Kendall, and Attorney Bursek are not proper respondents and the habeas claims against them should be dismissed.

- Setting habeas corpus jurisdiction aside, this Court does not have any other federal question jurisdiction in this case.

- Neither the Declaratory Judgment Act nor the All Writs Act independently provides this Court with jurisdiction.

- An evidentiary hearing is not needed.

On the other hand, reasonable jurists **may** find it debatable whether:

- Father may proceed as the Child's next friend.

- Section 2241 could potentially apply to the Child.

- Mother may be the proper respondent.

- this Court has jurisdiction over Mother as respondent.

- the domestic relations exception, *Younger* abstention doctrine, and *Rooker-Feldman* doctrine apply.

This latter set of issues were essentially answered the Child and Father's favor or not resolved. The undersigned therefore concludes that a COA is not needed on these issues. For these reasons and the reasons discussed above, **the undersigned RECOMMENDS that the Court DENY a certificate of appealability on each issue raised herein.**

## VIII. Filing Fee

Father paid a filing fee of $402 when he filed this case. (ECF No. 4). The filing fee for a habeas corpus action is only $5. *See* 28 U.S.C. § 1914(a). Father is therefore entitled to a refund of most of his filing fee. The Clerk of Court will be directed to process that refund at this case's conclusion, or as directed by the Court upon consideration of this Report and Recommendation.

## IX.    SUMMARY AND RECOMMENDED DISPOSITION OF THE CASE

Having considered all the parties' filings and the relevant law, the undersigned United States Magistrate Judge **RECOMMENDS** that the Court **DISMISS** this habeas corpus case for lack of jurisdiction.

- The "common law" habeas claim should be dismissed because this Court does not have common law habeas jurisdiction. Section V.A.1.

- Any habeas claim by Father on his own behalf should be dismissed because Father is not "in custody." Section V.A.2.

- The habeas claim(s) under § 2243 should be dismissed because this section is procedural and does not describe a separate type of habeas claim. Section V.A.3.

- The habeas claim(s) under § 2255 should be dismissed because this Court did not sentence the Child and because § 2255 does not apply here. Section V.A.3.

- The habeas claim(s) against the United States, Secretary Kendall, and Attorney Bursek should be dismissed because they are not proper respondents and there are generally no other defendants in a habeas case. Section V.A.4.

- The Child's habeas claim(s) under § 2241 should be dismissed because the Child is not "in custody" as that term is used in the statute. Section V.B.1.

No other statutes give this Court jurisdiction to proceed, Sections V.A.1., V.B.2., and an evidentiary hearing is not required to reach these conclusions, Section VI.

The undersigned **RECOMMENDS** that the Court **DENY** a certificate of appealability on each issue decided adverse to the Child and Father. Section VII.

The parties may file Objections to these recommendations as discussed in the next section. They (or their counsel) are reminded to keep this Court informed of their current addresses.

**IT IS SO RECOMMENDED.**

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### Notice Regarding Objections to this Report and Recommendations

If any party objects to this Report and Recommendations ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).